*In re* DISSOLUTION OF DETROIT METROPOLITAN CORPORATION.

PETITION OF PALMER.

APPEAL OF LIVINGSTON.

1. TRUSTS—EQUITY—APPROVAL OF SETTLEMENT.
   An equity court which has jurisdiction of the subject matter and parties interested in leasehold trust mortgage may approve a settlement by trustee whereby holders of lessee's interest, including bondholders, now worthless because of forfeiture of lease, receive favorable treatment.

2. Equity—Trusts—Jurisdiction.
   The whole subject of trusts is one of equity jurisdiction.

3. Trusts—Leasehold Trust Mortgage—Foreclosure—Power of Trustee to Effect Settlement.
   A trustee under a leasehold trust mortgage who, after having instituted foreclosure proceedings on behalf of bondholders, received an offer of settlement would have a right to make the settlement if it was for the best interest of the bondholders.

4. Same—Equity—Jurisdiction—Personal and Substituted Service—Acceptance by Trustee of Settlement on Foreclosure of Leasehold Trust Mortgage.
   Equity court which had jurisdiction over subject matter and parties interested in matter of settlement of foreclosure proceedings, commenced by trustee under leasehold trust mortgage, by virtue of personal service upon all known parties interested and within the jurisdiction of the court and giving of notice by publication in compliance with court rule and statute upon unknown interested persons had power, upon petition of trustee for advice as to acceptability of such settlement offer, and after full hearing thereon, to order acceptance of offer and performance thereunder (3 Comp. Laws 1929, § 15538; Court Rule No. 77 [adopted June 7, 1937]).

5. Corporations—Dissolution—Equity—Jurisdiction—Petition by Trustee Under Leasehold Trust Mortgage.
   In statutory proceedings relative to dissolution of a corporation, mortgagor under a leasehold trust mortgage, equity court had jurisdiction to entertain petition by successor trustee under the mortgage for advice as to acceptability of offer of settlement which would wind up the affairs of defunct corporation, terminate equity suit for accounting and foreclosure, and make order approving settlement where all interested parties were given notice and a full hearing thereon was had, it not being required that such relief be had by way of an original bill (3 Comp. Laws 1929, § 15310 *et seq.;* § 15538; Court Rule No. 77 [adopted June 7, 1937]).

6. Attorney and Client—Fees—Representative of Class of Litigants.
   In proceeding in a court of equity which involved, among other matters, the disposition of rights of numerous bondholders, trial court's allowance of attorney fees in the sum of $2,500 to attorney, who actively participated in the proceeding and

represented himself as the owner of bonds of the par value of $2,000 and was representative of all holders of bonds of the same class as his except those present in court or represented by other counsel at said time, is affirmed.

7. COSTS—TWO APPEALS HEARD AS ONE.

    Upon affirmance of order in main case on appeal and allowance of costs therein and dismissal of appeal from order allowing attorney fees, which appeal had been, in effect, consolidated and heard with the main appeal, no costs are allowed appellee as to second appeal.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted April 12, 1939. (Docket No. 80, Calendar No. 40,477.) Decided June 22, 1939.

In the matter of the dissolution of Detroit Metropolitan Corporation, a Michigan corporation. Petition by Gardner E. Palmer, successor trustee under trust indenture dated February 1, 1927, from Detroit Metropolitan Corporation to Fidelity Trust Company, as trustee, for instructions relative to proposed settlement agreement. From orders approving settlement agreement and allowing attorney fees, Helen M. Livingston appeals. Affirmed.

*Yerkes, Goddard & McClintock* (*Dykema, Jones & Wheat,* of counsel), for petitioner Gardner E. Palmer, successor trustee under leasehold trust mortgage.

*Sempliner, Dewey, Stanton & Honigman,* for Joseph J. Cavanaugh, successor trustee under note trust indenture.

*Bulkley, Ledyard, Dickinson & Wright* and *Miller, Canfield, Paddock & Stone,* for Union Guardian Trust Company, donee of powers.

*Hill, Hamblen, Essery & Lewis,* for Ned W. Andrus, receiver of Detroit Metropolitan Corporation.

*Pear, Campbell, Langs & Tyler,* for appellant
Helen M. Livingston.

CHANDLER, J.  The parties interested in the sub-
ject matter of this appeal are as follows:

Gardner E. Palmer, as successor trustee under a
leasehold trust mortgage for $2,000,000, dated Feb-
ruary 1, 1927, given by the Detroit Metropolitan Cor-
poration to the Fidelity Trust Company, having been
appointed as successor trustee by the circuit court
for the county of Wayne on December 14, 1931;
Ned W. Andrus, as receiver of the Detroit Metropoli-
tan Corporation, having been appointed on April 26,
1933, as such receiver by the circuit court for the
county of Wayne in a certain cause entitled "In
the matter of the dissolution of Detroit Metropolitan
Corporation;" Union Guardian Trust Company, as
donee of powers under an agreement by and between
Detroit Metropolitan Corporation, Detroit Proper-
ties Corporation and the Union Trust Company,
bearing date of February 1, 1927; Joseph J. Cava-
naugh, as successor trustee under a note trust inden-
ture executed by Detroit Properties Corporation to
Guardian Trust Company under date of March 1,
1927; Collateral Liquidation, Inc., a corporation
which acquired the assets of the Detroit Properties
Corporation, pending suit, from Union Guardian
Trust Company, as receiver of Detroit Properties
Corporation; approximately 2,200 individuals, hold-
ers of leasehold bonds secured by the leasehold trust
mortgage above referred to from Detroit Metropoli-
tan Corporation to Fidelity Trust Company; ap-
proximately 1,000 persons, fee owners as tenants in
common of the property described in the trust mort-
gage above referred to, being real estate and build-
ings thereon known as the Michigan Theatre and office
building in the city of Detroit, the ownership of such

individuals being evidenced by fee ownership certificates for which they originally paid $4,500,000, said certificates having been issued under the power agreement above referred to, in which there was reserved to the Union Guardian Trust Company as donee of powers certain powers of management, among which was the right to exercise the remedies of the lessor set forth in a 99-year lease from the Detroit Properties Corporation to the Detroit Metropolitan Corporation, bearing date of February 1, 1927; Detroit Properties Corporation, now in receivership, owner of all of the stock in the Detroit Metropolitan Corporation; approximately 365 individuals, owners of notes in the sum of $2,000,000 issued by Detroit Properties Corporation and secured by pledge of stock of the Detroit Metropolitan Corporation; and Helen M. Livingston, appellant herein, owner of leasehold bonds of the par value of $10,000.

The present assessed valuation of the property known as the Michigan Theatre and office building is $2,235,320.

The lease above referred to from Detroit Properties Corporation to Detroit Metropolitan Corporation provided for an annual rental of $247,500, payable quarterly, which, as will be noted, is exactly equal to five and one half per cent. of $4,500,000, the sum invested in fee ownership certificates; and also for the payment of taxes and insurance by the lessee. Said lease required that certain sums be deposited quarterly with the Union Trust Company, now the Union Guardian Trust Company, as depositary, into a fund described as a depreciation fund, in the aggregate amount of nearly $4,000,000, covering a period ending January 1, 1976, said payments to commence in 1932 at the rate of $6,575, and to gradually increase in amount until 1976 when they would reach the sum of $67,900 quarterly.

Default in payment of interest on the Detroit Metropolitan Corporation bonds commenced August 1, 1930, and has continued to the present time.

On September 16, 1936, the Union Guardian Trust Company, as donee of powers, served notice of default in the payment of rentals upon Ned W. Andrus, receiver of the Detroit Metropolitan Corporation, claiming that there was due by the terms of said lease at that time the sum of $1,674,496, in addition to default in the payment of quarterly sums into the depreciation fund. The said donee, under date of October 19, 1936, gave another notice to the receiver, terminating the lease as of November 19, 1936. The Detroit Metropolitan Corporation leased the Michigan Theatre to Balaban & Katz Corporation in 1925 for a period of 50 years at an annual rental of $250,000. The lessees later became affiliated with the Paramount Publix Corporation which went into receivership, and in April, 1933, the rental was reduced to $125,000 per annum to continue until 1937.

On November 19, 1936, Gardner E. Palmer, as successor trustee, filed in the circuit court for the county of Wayne a bill of complaint naming the following defendants: "Ned W. Andrus, receiver of Detroit Metropolitan Corporation; Joseph J. Cavanaugh, successor trustee under trust indenture dated March 1, 1927, from Detroit Properties Corporation to Union Trust Company, as trustee; and Union Guardian Trust Company, a Michigan corporation, as receiver of Detroit Properties Corporation and as donee of powers under agreement between Detroit Metropolitan Corporation, Detroit Properties Corporation, and Union Trust Company, dated February 1, 1927," and seeking the following relief: an accounting of the amount due on the bonds of the Detroit Metropolitan Corporation secured by the lease covering the premises described in the trust mortgage above mentioned; the foreclosure of said

mortgage; the appointment of a receiver pending a hearing of said cause to receive, collect, and hold the rents and income from the mortgaged premises; that the deed from the Detroit Metropolitan Corporation to Detroit Properties Corporation and the lease from the Detroit Properties Corporation to the Detroit Metropolitan Corporation be decreed to be a mortgage, and asking for an accounting of the amount due thereon; that an accounting be had of the furniture and personal property of the Detroit Metropolitan Corporation, and that such furniture and personal property be decreed to be subject to the payment of plaintiff's mortgage; and that pending the determination of said cause the Union Guardian Trust Company be restrained from forfeiting, attempting to forfeit, or proceeding with forfeiture proceedings at any time pursuant to the lease between the Detroit Properties Corporation and the Detroit Metropolitan Corporation.  All of the defendants appeared and filed answers and some of them cross bills.  The case was assigned for hearing in June, 1938, but immediately prior thereto the parties heretofore mentioned, except appellant, renewed prior negotiations for a settlement of this involved litigation and finally, on July 27, 1938, the settlement agreement here involved was executed.  The agreement was executed by the plaintiff and the defendants in the foreclosure suit.  It would serve no useful purpose to quote verbatim this lengthy document.  It provided that Gardner E. Palmer, as successor trustee, should petition the circuit court for the county of Wayne, by appropriate proceedings, seeking instructions from said court relative to the carrying out of the terms and conditions of the agreement which provided that Palmer, as successor trustee, should assign to the Union Guardian Trust Company, as donee of powers, his right, title and interest in a certain claim against

the Fidelity Trust Company, being an unpaid balance of upwards of $28,000; that the said Ned W. Andrus, receiver, was to deliver, transfer, quitclaim, and assign to the Union Guardian Trust Company, as donee of powers, all of his right, title and interest, as such receiver, in all property of which he was seized, and Joseph J. Cavanaugh, as successor trustee, was to receive from said trust company the sum of $20,000 in cash; and said trust company was to assume the payment of all costs and expenses in such receivership, all expenses of such receiver incident to the carrying out of the terms of the agreement, all administrative expenses and disbursements in such receivership, all unpaid indebtedness and liabilities of said receiver contracted or incurred as such in the management and operation of the receivership property, and all obligations of said receiver under any existing executory land contracts and subleases entered into, assumed, or adopted by said receiver. Also, Gardner E. Palmer, as successor trustee, was to be paid by the Union Guardian Trust Company, as donee of powers, the sum of $65,000 in cash and was to be permitted to retain all sums theretofore received by him as such trustee on the above-mentioned claim against the Fidelity Trust Company and not paid over to the said Union Guardian Trust Company theretofore, the amount in his hands being substantially $15,000. As a consideration for the receipt by him of this sum amounting to $80,000, he was to consent to the dismissal of his bill of complaint filed for foreclosure with prejudice and without costs, it being expressly provided in said proposed settlement agreement that none of the things provided for therein should be done except upon order of the court after a full hearing upon the petition of the successor trustee and receiver Andrus.

On August 2, 1938, Gardner E. Palmer, as successor trustee, pursuant to the terms of the proposed settlement agreement, filed his petition, which is made a part of the record, in which the proposed settlement was set forth in detail as well as the pertinent facts in connection with the litigation involved, and asked instructions of the court as to whether or not he should consummate the settlement substantially in accordance with the terms of the agreement; and that, if the court should find upon a hearing of said petition that the settlement was fair and reasonable and for the best interests of the holders of the leasehold bonds, that he be empowered and directed to carry out such settlement substantially in accordance with the terms of the agreement, and to make, execute, and deliver all necessary instruments or documents and to do other acts and things necessary to that end.

On August 2, 1938, upon the filing of the petition, the court issued its order directing all parties shown to have any interest therein to show cause why said court should not direct and empower the petitioner to carry out the terms of the settlement agreement, or a settlement agreement substantially similar thereto. It appears from the record that personal service was had upon all known parties interested and within the jurisdiction of the court, and that notice of said order was given to the unknown interested parties in pursuance of Court Rule No. 77 (adopted June 7, 1937), which provides.

"When a trustee or other fiduciary under an express trust shall have filed a bill or petition in a court of chancery praying only instructions in performance of duties involving trust relations, if it shall appear from such bill or petition, by reason of multiplicity of parties, absence of parties from the State, or otherwise, that personal service upon all or cer-

tain of them within this State will be impossible, impractical or unduly burdensome, the circuit judge may make an order setting forth in general terms the purpose or purposes of such bill or petition and specifying a time and place of hearing thereon, and directing publication thereof substantially as is required by Compiled Laws of 1929, § 15538, or amendments thereto, relating to probate notices, and such substituted service by publication shall be given the same effect as is given to probate notices published pursuant to said section."

It further appears that all of the provisions of the statute, rule and practice in the giving of notice were complied with, and that said order to show cause was returnable on August 26, 1938. Counsel for appellant appeared and made the following statement:

"*Mr. Tyler:* Having recently been involved in a trust issue on 8162 East Jefferson and knowing how the Supreme Court has definitely stated that sometimes in construing powers of trustees you must consider commas, I do not understand how an order to show cause can issue out of a receivership case for instructions to the trustee on his powers. Our statute has determined that a court of chancery on original bill may construe trust instruments, if that is necessary, or in a foreclosure proceeding on behalf of the trustee. Where he is representing bondholders, that chancery court on a proper proceeding can instruct him, if instructions are necessary.

"Now we are coming in here on an order to show cause. These bondholders don't know what it is all about. There is no proceeding directly in which they are directly concerned, such as an original bill to construe their trust instruments, because it is there. They are *cestuis que trustent* in which their trustee brings them into the receivership proceeding of Detroit Metropolitan Corporation. I do not care

to argue the background, the merits or demerits of the plan, but I am saying that bondholders are not properly brought before this court on such an order to show cause and they are not capable of coming in and protecting their interests, because the bondholders are faced with this maze of side issues, when as far as they are concerned, there is only one question: Should their trustee be permitted to forego foreclosure of the trust mortgage and give up whatever assets the trustee may have? And I feel that that can only be determined in an original bill under the statute, or in an action pending on the foreclosure of that mortgage where the parties may not be confused with all these issues. An early Michigan case determined that the trustee had no power to waive a deficiency decree. If the trustee could not waive the deficiency decree, I cannot see how he can waive his foreclosure of the mortgage against the trust assets.

"Possibly counsel have covered that matter thoroughly, but in our research of this problem, we found the trustee had absolutely no powers at all to waive anything, except as to those bondholders who came in and consented in writing, and I should like, your Honor, on behalf of the bondholder in this case, to have the order to show cause dismissed, as far as the trustee is asking for instructions out of this proceeding as to what he might do in the disposition of the trust estate."

The record discloses that no other or further objections were raised by appellant, and that no further active participation on the part of appellant or her counsel was taken upon the hearing which lasted several days. One other bondholder who owned bonds of the par value of $2,000 appeared in person and objected to the granting of the order but takes no part in this appeal.

At the conclusion of the hearing, the trial court filed his findings, and made an order. The findings were:

"(1)   The petition of Gardner E. Palmer, successor trustee as aforesaid, filed herein, is the petition of a trustee under an express trust, praying only for instructions in the performance of his duties as successor trustee as aforesaid, involving trust relations.

"(2)   There was originally issued 2,250 bonds of the issue described above, in the aggregate face amount of $2,000,000. The names and addresses of the holders of a great majority of said bonds are unknown. Said bonds pass from owner to owner by delivery without registration and without information of such transfers being given to the trustee or successor trustee or any other person. There is a multiplicity of holders of said bonds and it is impossible to find who are the holders of all of said bonds. By reason of these facts and otherwise, personal service upon all the holders of such bonds within this State will be impossible and impractical and unduly burdensome.

"(3)   Said order entered by this court on August 2, 1938, was duly, regularly and properly entered. Said order was published once in each week for three successive weeks in the Detroit Legal News, the Detroit Free Press and in the Detroit News, those being newspapers printed and circulated in the county of Wayne and State of Michigan, which is the county in which this court is located and in which the property constituting the trust estate and. the security for said bonds is situated. Copies of said order were within 10 days of the date thereof sent by registered mail, with return receipt requested, to all holders of said bonds known to petitioner at their respective last addresses known to Petitioner.

"(4)   All proceedings upon said petition and order entered August 2, 1938, have been regular and in

accordance with the statutes and the rules and prac-
tice of this court and especially in accordance with
Rule No. 77 of the rules of the Supreme Court of
Michigan.

"(5)    This court has jurisdiction over the real
and personal property described in said petition and
referred to in the settlement agreement attached
thereto, including the real and personal property and
all rights, titles and interests therein constituting
the security for said bonds under said indenture of
February 1, 1927, and including rents, income and
profits from said property and the cash and accounts
receivable arising therefrom and otherwise, and Ned
W. Andrus, receiver of Detroit Metropolitan Corpo-
ration, appointed and acting as such in these pro-
ceedings, is in possession of all of said property by
virtue of his authority as such receiver, except cash
on hand in the amount of $12,577.33, and a claim
receivable against Fidelity Trust Company for an
unpaid balance in the amount of $28,268.05, which
are in the possession of petitioner, Gardner E.
Palmer, and except certain funds disbursed from
time to time on the order of this court.

"(6)    Adverse and conflicting rights, titles and
interests in said property have been asserted by
Gardner E. Palmer, petitioner, as successor trustee
as aforesaid, and by Union Guardian Trust Com-
pany, a Michigan corporation, as donee of powers
under a certain agreement between Detroit Metro-
politan corporation, Detroit Properties Corporation
and Union Trust Company, dated February 1, 1927,
and recorded in the office of the register of deeds
for Wayne county, Michigan, on March 15, 1927, in
liber 2566 of deeds at page 80, and by Joseph J.
Cavanaugh, successor trustee under trust indenture
dated March 1, 1927, between Detroit Properties
Corporation and Guardian Trust Company, as trus-
tee, securing an issue of $2,000,000 of five-year six
per cent. secured gold notes of Detroit Properties
Corporation, and by Ned W. Andrus, receiver of

Detroit Metropolitan Corporation, as aforesaid; all right, title and interest of Detroit Properties Corporation in and to the said property was conveyed to Collateral Liquidation, Inc., a Delaware corporation, which purchased the same subsequent to the institution of the cause hereafter referred to and with full notice thereof; over all of these persons this court has full and complete jurisdiction. These adverse and conflicting rights, titles and interests in said property have been asserted and raised in the pleadings heretofore filed in a certain cause commenced and now pending in this court, entitled Gardner E. Palmer, successor trustee under trust indenture dated March 15, 1927, [February 1, 1927 ?] from Detroit Metropolitan Corporation to Fidelity Trust Company as trustee, plaintiff, v. Ned W. Andrus, receiver of Detroit Metropolitan Corporation, *et al.,* defendants, being circuit court for the county of Wayne in chancery No. 261,968.

"(7) A settlement of all such adverse and conflicting claims of rights, titles and interest in said property has been proposed by Union Guardian Trust Company, as donee of powers, under the said agreement dated February 1, 1927. A copy of said settlement agreement is attached to said petition, and reference thereto is hereby made and same is hereby made a part of this order.

"(8) By virtue of the proceedings more particularly identified in paragraphs (3) and (4) hereof, this court has full and complete jurisdiction over all holders of bonds of the issue described above, for which issue petitioner is successor trustee, as herein set forth.

"(9) Petitioner, Gardner E. Palmer, as successor trustee as aforesaid, has the power under said indenture of March 15, 1927 [February 1, 1927 ?] to carry out said settlement agreement.

"(10) Said settlement agreement is fair and reasonable and it is and will be for the best interest of the holders of said bonds for petitioner, Gardner

E. Palmer, as successor trustee, as aforesaid, to carry out said settlement agreement.''

The court's order reads as follows:

''Now, therefore, it is ordered that petitioner, Gardner E. Palmer, as successor trustee as aforesaid, carry out said settlement agreement substantially in the form as attached to said petition; provided, however, that petitioner be and he hereby is ordered to retain all sums received by him in accordance with the settlement agreement until the amount of fees and expenses of the said trustee and his counsel shall have been determined and approved by this court, and this court does hereby specifically reserve jurisdiction for such purpose.

''It is further ordered that a hearing for the purpose only of determining and approving such fees and expenses be held without further notice on the 28th day of November, 1938, at the opening of court.''

The determining question here involved is whether or not a court of equity in a statutory proceeding for the dissolution of a corporation has the power to entertain a petition for advice from the court, and to issue an order approving a settlement between all the parties in interest, which settlement provides for winding up the receivership and for the termination of a pending equity suit in connection therewith.

If this question is answered in the affirmative, the order of the trial court must be affirmed, because the record justifies the finding of the court that the settlement is fair and reasonable and in the best interests of all parties concerned. If answered in the negative, reversal follows, and the petition should be dismissed.

The appellant contends that the trial court did not acquire jurisdiction over the subject matter, the

leasehold bondholders, or Palmer as successor trustee by the petition filed by said trustee because of what she claims to be the limited and restricted jurisdiction of the court in the statutory proceeding to dissolve the Detroit Metropolitan Corporation, 3 Comp. Laws 1929, § 15310 *et seq.* (Stat. Ann. § 27.2354 *et seq.*), and insists that the procedure to obtain jurisdiction over the subject matter and the parties should have been by an original bill in chancery, and in support thereof cites and quotes from *Ledyard's Appeal,* 51 Mich. 623.

In the *Ledyard Case,* a petition was filed in chancery by the assignors of a common-law assignment for the benefit of creditors for the appointment of a successor trustee. A successor trustee was appointed. A creditor questioned the validity of the order of the court appointing such successor trustee, claiming a lack of authority existed on the part of the equity court to make such appointment. Upon appeal, involving the question of jurisdiction, this court said:

"The whole subject of trusts is one of equitable jurisdiction, well defined, and the general practice under the various branches has been of long standing, both in England and this country, and has become a part of the remedy itself, and no departure therefrom can be had, except authorized by statute or by the rules of court clearly making the change. * * *

"Whenever a trust has been created, and the trustee appointed dies, or for other cause is incapable of discharging the duties of the trust, equity, when properly invoked, will appoint some suitable person to complete the execution of the trust; and upon proper proceedings taken in his behalf, or upon the part of any party interested in the trust

property or fund, the court will furnish such aid as
may become necessary, from time to time, in the
proper administration of the trust, but in any case
such proceedings cannot be instituted by petition.
*When they are taken all parties interested must
have notice of the same, either actual or substituted,
and on petition the latter cannot be obtained. Proceedings of this kind can only be had by bill of complaint. All parties may then in some way be properly brought before the court, which has ample
power to do whatever may be just and equitable in
the premises.*

"The petition in this case presented for the appointment of the trustee was not the proper proceeding to be taken. It gave the court no jurisdiction to make the appointment, and all action had
thereunder is without proper authority."

It is clearly apparent from the foregoing that the
reason the court held it was without jurisdiction to
grant the relief sought by the petition was because
at that time there was no provision, either by statute or rule, to obtain substituted service on parties
interested, who were either unknown or without the
jurisdiction of the court, in a proceeding instituted
by such a petition, but there was provision for obtaining substituted service of process initiated by
the filing of an original bill. Long after the opinion
in the *Ledyard Case* was written, Court Rule No. 77
(adopted June 7, 1937) was adopted, which made
provision for substituted service in just such cases
as the foregoing and the instant one.

In the proceedings at bar which was entitled "In
the Matter of the Dissolution of the Detroit Metropolitan Corporation," pending in the circuit court
for the county of Wayne, in chancery, the petitioner,
Gardner E. Palmer, as successor trustee, appointed
by the same court, was interested as a creditor of

said corporation. The leasehold bondholders, of which appellant was one, were also interested in said dissolution proceedings as creditors. The receiver of Detroit Properties Corporation, which owned the stock of the Detroit Metropolitan Corporation, was naturally interested therein. Joseph J. Cavanaugh, as trustee under a note trust indenture executed by Detroit Properties Corporation to Guardian Trust Company, secured by pledge of stock of the Detroit Metropolitan Corporation, was also interested in such proceedings.

Palmer as such successor trustee had filed a bill of complaint for the foreclosure of the mortgage of which he was trustee, and also sought other relief as hereinbefore described. After the case of Palmer v. Andrus had been set for hearing in the court below, a proposition to settle on the basis of payment of $80,000 to the leasehold bondholders and $20,000 to Joseph J. Cavanaugh, as successor trustee, by Union Guardian Trust Company, as donee of powers, was made, which resulted in the institution of this proceeding.

At the hearing, objection was raised by one holder of leasehold bonds in the principal amount of $2,000 and by appellant. Several other leasehold bondholders were in court but took no part in the proceedings. None of the holders of notes of the Detroit Properties Corporation objected to the settlement, but, on the contrary, the owner of more than 50 per cent. thereof filed its written consent thereto. Counsel for appellant made the objections on the record hereinbefore quoted, but made no request for additional time to produce testimony to the effect that the proposed settlement was not a fair one, or that its approval was not for the best interests of the leasehold bondholders. We think

the testimony of trustee Palmer as bearing on the question of the propriety of the settlement very pertinent, the following portion thereof standing uncontradicted:

"During the last four years since I have been trustee the operating figures of that property has not even approximated the ground rental payments during the period of my receivership. At no time since my appointment has the net income been sufficient to meet the current expenses and the rental fixed by this lease of $247,500. The approximate amount of defaults on the leases to the present time would seem to be $1,800,000 as stated by Mr. Maxwell.

"From my knowledge of the litigation and the facts, I do recommend such a settlement as is set forth in my petition. Shortly before the commencement of the case of Palmer v. Andrus I received a notice of default and notice of termination of the lease from the Union Trust Company."

A careful review of the record indicates that the trial court was not in error in approving the settlement agreement, and entering an order to that effect, providing he had jurisdiction of the subject matter and the parties. It is clear the stock of Detroit Metropolitan Corporation and its leasehold bonds were worthless; that said bonds had merely a nuisance value, if any; and, that the settlement, as disclosed by the record, was favorable to appellant and other bondholders.

Therefore, the only question that remains for our determination is whether the trial court in the exercise of its equity powers had authority to make the order complained of.

We find nothing in the case of *Ledyard's Appeal*, *supra*, that supports appellant's contention that a

court of equity could only acquire jurisdiction by
the filing of an original bill to grant the relief sought
here by petition. The whole subject of trusts is
one of equity jurisdiction. Trustee Palmer, after
commencement of foreclosure proceedings on behalf
of appellant and other bondholders whom he repre-
sented, received an offer of settlement which he
deemed advantageous to his trust. Instead of mak-
ing a settlement which he would have had a right
to do if it was for the best interest of his bond-
holders, he filed his petition setting up all the facts
and sought the aid of a court of equity in determin-
ing the advisability of such a settlement. An order
to show cause directed to appellant and all other
interested parties was issued, and a full and fair
hearing was had thereon. Every interested party
was given ample opportunity to be heard. We are
at a loss to understand what other or better method
could have been adopted. We conclude that the
court had jurisdiction of the parties and the subject
matter.

A question similar to this was raised by the appel-
lant in *Wallace* v. *Guaranty Trust Co.,* 259 Mich.
342. In that case it was urged that the proceeding
to bring the bondholders before the court should
have been by bill of complaint in an independent
proceeding rather than by a petition. Of this we
said:

"The right and duty of the court in the exercise
of its general equity jurisdiction to appoint a suc-
cessor trustee is not questioned; but it is claimed
that this can only be done in an independent pro-
ceeding instituted by bill of complaint. In support
of this contention, *Ledyard's Appeal,* 51 Mich. 623,
is cited and relied on. In that case it was held that
proceedings to appoint a successor trustee must be

instituted by bill of complaint instead of by petition, so that all parties interested could be brought in, and, unless this was done, the court acquired no jurisdiction. There is no statute or rule of court governing the practice. We assume that any proceeding by whatever name it may be called which requires notice to the parties concerned and furnishes them an opportunity to be heard is sufficient to give the court jurisdiction. That course was followed in the instant case. When the petition for the appointment of a successor trustee was filed, the court issued an order to show cause why the resignation of the receiver from the trust should not be accepted and a suitable person appointed as successor trustee. The order provided for substituted service by publication in the Detroit Free Press and for personal service by mail. Publication was had as directed and copies of the order to show cause were mailed to all persons who were shown in the books and records of the original trustee to be interested. The plaintiff had notice, appeared, and was heard. The bondholders' protective committee appeared by counsel and consented to the proposed action. We think these proceedings were in substantial compliance with the practice approved in *Ledyard's Appeal, supra,* and gave the court jurisdiction to appoint the successor trustee."

These proceedings are quite similar to those had in the *Wallace Case.* We are unable to find any authorities that indicate that the trial court was in error in making the order from which the appeal is taken.

The order is affirmed and the case remanded with directions for entry of a decree in accordance with the order of the trial court, with costs to appellees.

There was another order entered by the trial court allowing attorney's fees to Alvin D. Hersch, from which order a claim of appeal was also filed by this

appellant.  We refrained from discussing this question in order to avoid confusion with the questions involved in the main appeal.  It further appears from the record that Alvin D. Hersch, an attorney, appeared upon the hearing of the petition, representing himself as the owner of leasehold bonds of the par value of $2,000, and opposed the granting of the petition.  He actively participated in such opposition during the entire hearing.  After making the order granting the relief sought in the petition of Gardner E. Palmer, and on December 6, 1938, the trial court made an order allowing an attorney fee to said Alvin D. Hersch in the sum of $2,500 in satisfaction and discharge of his claim for legal services against the estate of the Detroit Metropolitan Corporation and in connection with services as representative of all holders of leasehold mortgage bonds of the Detroit Metropolitan Corporation of the same class as his, except those present in court during the hearing or represented by other counsel at said time.  Appeal was taken from this order by Helen M. Livingston.  She complains that the language of the order allowing the fee might be construed to mean that the rights of all other leasehold bondholders had been adjudicated, and that the order in effect holds that they had been properly represented in court by attorney Hersch, and none of said bondholders other than herself having taken an appeal, said other bondholders might be in a position where they could not obtain a *pro rata* share in any benefit that might be obtained as a result of the appeal prosecuted by her.  Counsel for appellant state in their brief that they have no objection to Alvin D. Hersch being paid $2,500 by the receiver of the Detroit Metropolitan Corporation as provided in said order.  Counsel further

state that they do not object to the position taken by Mr. Hersch that he had represented other bondholders, and that the reason for the appeal is to obtain a modification of or addition to the order to the effect that the record does not show that Mr. Hersch represented all of the leasehold bondholders other than appellant, or those present in court, or those represented by other counsel. We think this question should be disposed of in order that there may be no misunderstanding in the entry of a decree in this cause pursuant to the order of the trial court made therein.

In view of our opinion in the main case, this appeal should be dismissed, and the order of the trial court allowing said attorney fees affirmed, but without costs, as costs have already been allowed to appellee, the two appeals having in effect been consolidated and heard as one.

BUTZEL, C. J., and WIEST, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred. BUSHNELL, J., did not sit.