DETROIT TRUST COMPANY *v.* NEUBAUER.

1. COMPROMISE AND SETTLEMENT—ESTATES OF DECEASED PERSONS. Courts regard favorably the settlement of litigation, especially among those interested in the estates of deceased persons.

2. CONTRACTS—CONSIDERATION—FORBEARANCE OF CONTEST OF WILL. A promise to forbear the contest of a will, when made in good faith, is a sufficient consideration to support a contract.

3. WILLS—COMPROMISE OF CONTROVERSY—STATUTES—GUARDIAN AD LITEM—TRUSTS.

Under the statute prescribing procedure for compromise of will contests and controversies relative to testamentary estates and trusts and providing for the appointment of a guardian ad litem for all persons interested in an estate who are under disability to represent themselves and for all interests whose ultimate recipients may not be in being or cannot be ascertained, such representation does not preclude, nor is it inconsistent with, further representation by a trustee, or by others having like interest with the one so represented (CL 1948, §§ 702.46, 702.48).

4. SAME—TRUSTS—MODIFICATION BY COURT.

Under the statute prescribing procedure for compromise of will contests and controversies relative to testamentary estates and trusts, a court of equity has the power to modify a trust or in some circumstances to extinguish it entirely with or without the consent of the trustee (CL 1948, §§ 702.-46, 702.48).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 11 Am Jur, Compromise and Settlement, § 4.
[2] 11 Am Jur, Compromise and Settlement, § 19; 12 Am Jur, Contracts, § 85; 57 Am Jur, Wills, § 1006.
[2] Family settlement of intestate's estate.   6 ALR 555.
[2] Consideration for compromise of family dispute over estate. 38 ALR 734; 118 ALR 1357.
[2] Contract to refrain from contesting will.   55 ALR 811.
[3, 4, 6, 7, 9, 10] 57 Am Jur, Wills, § 996.
[4, 6–10] 54 Am Jur, Trusts, § 594; 57 Am Jur, Wills, § 1009.
[5] 11 Am Jur, Compromise and Settlement, § 25.
[8] 30 Am Jur, Judgments, § 225 *et seq.*

5. COMPROMISE AND SETTLEMENT—EFFECT OF SUBSEQUENT JUDICIAL
   DECISION.

   Where a doubt as to what the law is has been settled by a com-
   promise, a subsequent judicial decision by the highest court
   of the jurisdiction upholding the view adhered to by one
   of the parties affords no basis for a suit by him to upset the
   compromise.

6. WILLS—TRUSTS—COMPROMISE—PARTIES—CESTUI QUE TRUST—
   DETERMINATION OF HEIRS.

   Where title to property in testamentary trust did not vest in
   testator's heirs or in the heirs of the *cestuis que trustent,* but
   rather in the trustees named in the will, and distribution is
   required to be made to the heirs of the *cestuis que trustent*
   at the termination of the trust upon the death of the sur-
   vivor of the *cestuis que trustent,* the nephew of one of the
   *cestuis que trustent,* whose mother was living at time of tes-
   tator's death, but which mother has since died, not being
   entitled to contest the will, was not a person having such
   an interest as required his consent to a compromise agreement
   affecting the trust in which he has merely a possibility of an
   interest, since the heirs of a living *cestui que trust* cannot be
   determined until his death (CL 1948, §§ 702.46, 702.48).

7. SAME—COMPROMISE—PARTIES—REPRESENTATION.

   Appellant, a nephew of the surviving *cestui que trust* under
   testamentary trust *held,* to have been properly represented
   at making of compromise agreement affecting the trust not
   only by the guardian ad litem appointed by the probate
   court incident to authority conferred by statute pertaining
   to compromise of controversies affecting testamentary es-
   tates and trusts but also by the trustees entrusted with fi-
   duciary responsibility under different trusts created by the
   will and who sought approval by the probate court of the
   agreement involved, hence such agreement was not void for
   lack of his participation in its execution (CL 1948, §§ 702.46,
   702.48).

8. JUDGMENT — PARTIES — REPRESENTATION — COMPLETE AND FINAL
   DISPOSITION OF LITIGATION.

   The general rule that the interest of parties not before the
   court will not be bound by a decree entered therein is sub-
   ject to the exception that a party though not before the court
   in person, is so far represented by others that his interest
   receives actual and efficient protection, especially where the
   persons who are not before the court are only possible parties

not in being and where the interest of all parties requires a decree completely and finally disposing of all of the subject matter of the litigation.

9. TRUSTS—TITLE—PROTECTION OF ESTATE—PARTIES—TRUSTEES AS REPRESENTATIVES.

Where trustees are vested with the title to trust property and the trust estate is involved in litigation of such a nature as to impose upon them the duty to protect and preserve the estate for whomsoever shall be ultimately entitled to it, the trustees stand for and represent the ownership ultimately and the ownership is bound by the representation.

10. WILLS—TRUSTS—COMPROMISE AGREEMENT—EQUITY.

Compromise agreement of good-faith controversy, entered into between a *cestui que trust* under testamentary trust, heirs of the other *cestui que trust* and the trustees, which altered the terms of the trust respecting income from the trust estate, particularly, and which made some concessions to the living *cestui que trust* and to the heirs of the other, and which provided for disposition of a portion of the income as to which the will was lacking in certainty and definiteness *held,* fair from the standpoint of all parties concerned (CL 1948, §§ 702.46, 702.48).

Appeal from Wayne; Culehan (Miles N.), J. Submitted April 13, 1949. (Docket No. 23, Calendar No. 44,350.) Decided June 29, 1949. Rehearing denied September 8, 1949.

Bill by Detroit Trust Company, executor of the estate of Frederick G. Clayton, deceased, and others against James H. Neubauer and others for approval of a settlement agreement. Louis A. Archambeau objected thereto. Decree approved agreement. Louis A. Archambeau appeals. Affirmed.

*Moll, Desenberg & Purdy,* for plaintiffs.

*Phil D. Hall,* for defendant G. O'Donohue.

*Joseph L. Milburn,* for defendant James H. Neubauer.

*Miller & Stern,* for defendant Clayton O'Donohue.

*Walter M. Nelson,* for defendant Rose Abernathy.

*George E. Brand* and *Emerson H. Schink* (*George E. Brand, Jr.,* of counsel), for appellant.

CARR, J. This is an appeal from a decree of the circuit court of Wayne County approving a settlement of a controversy with reference to the construction of certain provisions of the will of Frederick G. Clayton, deceased. Mr. Clayton died on the 24th of May, 1946. The will in question was admitted to probate by the probate court of Wayne County, which action was affirmed by the circuit court, and by this Court in *Re Clayton's Estate,* 320 Mich 152.

The testator provided in the will for the creating of a trust for the benefit of certain named individuals and for the gift of stock owned by the testator in the F. G. Clayton Company to employees who were actively engaged in carrying on the business at the time of Mr. Clayton's death. Among the employees named in the will was the defendant James H. Neubauer, referred to in the will as testator's nephew, who was also one of the principal recipients of the income arising from the trust property. He was not in the employ of the company, however, at the time the testator died, which fact resulted in certain questions being raised as to his rights under the will.

An explanation of the situation out of which the case arises requires references to, and somewhat extended quotations from, the will and; also, the agreement. Paragraphs 9 and 12 of the will, which are directly involved in the present controversy, are as follows:

"PARAGRAPH 9: It is my wish and intention, and I so direct, that the business of the F. G. Clayton Company, which business I founded, shall be carried on after my death so long as the same shall be deemed profitable by my trustees, as hereinafter more fully set forth, and I create the trust in this paragraph for the protection of those of my faithful employees who now own stock or who may hereafter acquire stock by purchase or otherwise, and in protecting my own interest in said business.

"(A) Subject to the prior gifts of stock hereinbefore made, I therefore give, devise and bequeath to the SECURITY TRUST COMPANY, of Detroit, and to SAMUEL T. DOUGLAS, of Detroit, Michigan, all of the capital stock that I may own in the F. G. Clayton Company at the time of my decease, IN TRUST nevertheless, for the purpose herein set forth. And I direct my trustees, in conjunction with those of the company's employees who may own stock in the F. G. Clayton Company, to carry on the business now carried on by the F. G. Clayton Company for a period of 20 years or until such time as my said trustees shall think fit and wise, according to their best judgment, to dispose of my interest as represented by said stock in said business, and for that purpose I authorize my said trustees to retain and employ therein the capital which at my death will be represented by the stock that I then hold in the F. G. Clayton Company. In order that the said F. G. Clayton Company may have the proper financial backing which it now has by reason of my interest therein, I authorize my said trustees to let the income from my stock accumulate in their hands as dividends may be from time to time paid until said sum shall

amount of [to?] $250,000; and I further direct and anthorize my executor to turn over to said trustees securities out of my general estate or to sell the said securities as they may deem best for that purpose to the amount of $250,000, which fund together with the accumulations from income coming from my interest in said business as a stockholder I authorize my said trustees to loan from time to time to the said F. G. Clayton Company, during the period of this trust, and to use said fund in such amounts as will be necessary to continue and maintain the credit of the F. G. Clayton Company, taking from the F. G. Clayton Company for such advances, notes or other obligations in the name of said trustees, the avails of which notes when paid shall continue or be part of the trust herein created.

"I give to my said trustees full power and authority to vote such stock for all purposes, and further to indorse or guarantee any note or obligation that it may be necessary to give in the usual conduct of the business of said company, but not to exceed the amount of said accumulations plus the fund herein directed to be turned over by my executor to the trustees as in this paragraph provided. And whenever necessary they are hereby authorized to use said securities as collateral to any indorsement of any paper or loan that they may make to the F. G. Clayton Company to the amount mentioned. As such funds may accumulate from the profits of the business, I authorize my said trustees to invest in safe interest-bearing bonds such as are permissible for savings banks in the State of Michigan, my intention being to leave it to the discretion of my said trustees to permit the whole or any part of the sum due to my estate as my share or interest in the F. G. Clayton Company to remain in said business for such period as they may think proper, either at the fixed rate of interest or at the rate varying with or dependent upon the profits of the business, and from time to time to renew or continue any note or loan

of the F. G. Clayton Company that they may make to the said company.

"(C) I give to my said trustees power to act in all matters relating to said business as if they were beneficially entitled thereto, with power to delegate all or any of the powers vested therein in relation to said business to any person or persons whom they may think fit, having in mind at all times the best interests of my estate, together with the best interests of all the employees of said company who may at the time of my death or later be stockholders in said company; and I further declare that in case my said trustees shall at any time be of the opinion that said business cannot be continued to the advantage of my estate, they shall be at liberty and hereby directly authorized to sell or dispose of the stock so owned by me and so held in trust, giving first to all employees who may then be stockholders the right to purchase in proportion to their holdings said stock then held in trust, at the then book value thereof, provided said employee shall then be in the employ and practically and personally interested in the said F. G. Clayton Company. Said right, however, to purchase said stock shall not be assignable in any manner. For the purpose of protecting the interest of all employee stockholders, as well as my own interests, I direct that any stock, either belonging to me or so held in trust, which may be sold to any employee, shall bear the same indorsement as to the right to purchase as is referred to and fully set forth in subclause (E) of this paragraph. And I give to my trustees full power and authority to sell or dispose of at any time to any employee who has shown proper interest in the conduct of said business any of the stock so held by me at the time of my decease and so held in trust, as they may think advisable, giving to my said trustees full power and authority to repurchase any stock that I or my estate may have a right to purchase under the paragraph indorsed on said stock so held by any employee.

"(D) Provided always, and I hereby declare, that if the trustees herein constituted, or either of them, shall for any reason whatsoever be unable or unwilling to act as such trustee in carrying out the trusts herein mentioned, then I request that the probate court for Wayne county appoint a suitable person, satisfactory to the surviving trustee and at his or its request, to act in the place of said trustee, who shall be vested with all the powers, duties and obligations herein given. Upon the appointment of such cotrustee, it is my urgent request that the person so appointed shall be some person best acquainted with my business, and upon the appointment the trust property shall, so far as the nature of the property or other circumstance shall require, be considered as transferred to the trustee than [then?] acting so that the same power and authority as herein contained may be vested in the person or persons for the time being, and every trustee when appointed as aforesaid, as well before as after such transfer of said property, may act and assist in the execution of the trust and powers of this my will as fully and effectually as if I hereby constituted him such trustee.

"(E) All of the certificates of stock of the F. G. Clayton Company now held or which hereafter may be held by the employees shall have indorsed thereon the clause providing:

" 'This certificate of stock is sold or issued and accepted with the express understanding and agreement that if at any time, for any cause whatsoever, the said ......... .......... shall cease to be in the employment of the F. G. Clayton Company, then the said vendor, F. G. Clayton, his heirs, administrators, executors or assigns, shall have the right and option, for a period of 60 days from the date when said employment ceases, to purchase said stock by paying therefor the book value thereof at the date of the termination of said employment as shown on the books of the company.'

"I expressly give to my said trustees power and authority to carry out the provisions of this indorsement and to purchase any stock that may come within the terms of said restriction mentioned, and to pay therefor in cash and to charge the same against any trust funds that may be in their possession.

"(F) At the expiration of said trust, or whenever the same shall be terminated, or if my interest as represented by capital stock in the F. G. Clayton Company shall for any reason be sold, then all of the trust funds so held in trust, together with any accumulations thereon arising out of the dividends or otherwise, shall be given by my said trustees to my residuary legatees and devisees as herein mentioned, and I give to my said trustees full power and authority to make, execute and deliver any conveyance or any other instrument that may be necessary or, in the option of my trustees, advisable for the purpose of carrying out this trust.   *   *   *

"PARAGRAPH 12:   Subject to the provisions heretofore made in this will, I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed, and wherever the same may be situated, to the SECURITY TRUST COMPANY, of Detroit, Michigan, IN TRUST, for the lives of CAROLINE O. DONOHUE, my sister, and JAMES H. NEUBAUER, my nephew.   I direct that the net income from said trust property shall be paid one-half to my sister during the term of her natural life, to be paid to her at least quarterly or more often if necessary and advisable, and the other one-half of the net income from said trust property I direct shall be paid to my nephew, James H. Neubauer, during the term of his natural life, to be paid to him at least quarterly or more often if necessary and advisable.   On the death of either of said beneficiaries the one-half interest so held in trust for the deceased beneficiary shall be continued in said trust property for the benefit of the surviving beneficiary, the net income of the whole trust property to be paid to her or him as herein provided, the intention being that the property

so held in trust shall continue to be held in trust for the lives of the two persons mentioned in this paragraph. On the death of both of said beneficiaries, Caroline O. Donohue and James H. Neubauer, all of the property so remaining in trust I give, devise and bequeath one-half to the legal heirs of Caroline O. Donohue, share and share alike, and the other half to the heirs of James H. Neubauer, share and share alike.

"I give to my said trustees full power and authority to manage said trust property and to improve the same if in the judgment of said trustees it is wise so to do; and if such improvements require additional funds, to borrow money for the same and give security therefor by way of mortgage; if a mortgage shall become necessary to make such improvements then the income from said trust property shall, for the time being, be retained by said trustees to pay the principal of said mortgage. And I give to my trustees full authority to sell, convey or exchange the said trust property, to make and execute all necessary conveyances therefor, and to invest and reinvest and exchange any of said trust property during the life of this trust."

The will further nominated the Security Trust Company of Detroit as executor thereof. Said corporation was succeeded by the Detroit Trust Company, which is now acting in that capacity. It further appears that James H. Neubauer is still living but that testator's sister, whose correct name, it is conceded, was Caroline O'Donohue, was not living at the time of Mr. Clayton's death.

The settlement agreement in question was entered into between Mr. Neubauer, as the party of the first part, the heirs of Mrs. O'Donohue, as parties of the second and third parts, and the Detroit Trust Company as executor and sole surviving trustee under the will. It further appears that Samuel T. Douglas, the other named trustee, is deceased, and the agree-

ment designated his successor, Harold B. Desenberg, as a party to the agreement, together with the duly appointed guardian ad litem "of the unborn, undetermined, unascertained, unknown, contingent, incompetent and unascertainable beneficiaries of the trusts provided by paragraphs 9 and 12 of the last will and testament of Frederick G. Clayton, deceased, and of the present and future, unknown, unborn, unascertained, undetermined, contingent, incompetent and unascertainable heirs at law of Caroline O'Donohue and of James H. Neubauer, and of all inalienable and future contingent estates and interests which may be affected hereby." The decree of the trial court named Mr. Desenberg as trustee, in accordance with the agreement of the parties. Said trustees and the guardian ad litem previously appointed were expressly authorized to join in the settlement agreement.

The bill of complaint by which the approval of the agreement was sought was filed by the Detroit Trust Company as executor and trustee, and by Harold B. Desenberg as substitute cotrustee under the will. Said bill, after referring to the probate proceedings and the parties alleged to be interested under the will, alleged that a good-faith controversy had arisen with reference to the construction, validity, and effect of the will, and of certain provisions thereof, and of the rights and interests of the defendants as beneficiaries. A further controversy as to the administration of the estate and of the trusts created by the will was also averred, it being claimed that litigation involving such matters had been instituted. The court was asked to approve the submitted agreement and to authorize its execution by those parties subject to the direction of the court, in accordance with CL 1948, § 702.45 *et seq.* (Stat Ann § 27.3178[115] *et seq.*). The settlement agreement, after reciting the controversies between the

parties with reference to the construction of the will and the administration of the trusts created thereby, and also other matters not directly involved in this controversy, provided for the distribution of income from the estate as follows:

"3. That exhibit A attached hereto is a correct condensed statement of the income from the estate of said decedent from the date of his death to January 1, 1948, and that all of said net income in the sum of $167,849.87 shall be distributed 75 per cent., or $125,887.40, to first party, and 25 per cent., or $41,962.47, to said second and third parties, of which said 25 per cent., 1/7 shall be paid to each of said second parties and 1/56 shall be paid to each of said third parties.

"4. That the entire net income from the estate of said decedent, and from the trusts created pursuant to his last will and testament during the lifetime of said James H. Neubauer, except the income mentioned in the last preceding paragraph, shall be accounted for by the executor of said estate, and by the fiduciaries of said trusts in accordance with the same general accounting practice used in determining the income for the period ended December 31, 1947, and all of such net income shall be distributed as hereinafter set forth, subject to the rights of the trustees to use such income to preserve, protect or improve any property in said estate or in said trusts, as hereinafter provided.

"5. That during the lifetime of James H. Neubauer, the distribution of the net income shall be made quarterly, as follows:

"(a) The first $7,500 each quarter-annual period to James H. Neubauer;

"(b) The next $7,500 each quarter-annual period to the parties of the second and third parts;

"(c) 50 per cent. of the excess quarter-annual income over and above the amount distributed pursuant to (a) and (b) to James H. Neubauer;

"(d) The entire balance of the net income to the parties of the second and third parts.

"The income payable to the parties of the second and third parts, as set forth in subsections (b) and (d) of this paragraph 5, shall be divided and distributed 1/7 to each of said second parties, and 1/56 to each of said third parties. In the event of the death of James H. Neubauer prior to the termination of any quarter-annual period, then the distribution of the income for that quarter-annual period under (a) and (b) above shall be reduced to the same proportions that the number of days included in such quarter-annual period to the date of his death bears to the total number of days in the entire quarter. The distribution hereunder for the six-months period ended June 30, 1948 shall be made on the basis that 1/2 of the net income during such period was received in each of the quarter-annual periods included therein.

"6. That following the death of the said James H. Neubauer the entire net income from any of the trusts which are not thereby terminated, determined in the manner above set forth, shall be paid and distributed 1/2 to the heirs of James H. Neubauer, and the remaining 1/2 to the parties of the second and third parts to be divided among them 12/112 to each of said second parties, and 5/112 to each of said third parties.

"7. In view of the provisions herein made for distribution of the entire income from said estate and trusts, and in contemplation of the possible necessity or advisability of providing funds for the preservation, protection and improvement of the property, assets and corpus of said estate and trusts, the trustees may, in the event that funds are not readily available or obtainable on favorable terms from any other source, withhold from the distribution of income a sufficient amount to pay such costs, charges and expenses and deduct such amount from the income otherwise distributable to the parties entitled to receive the same in the same proportions

that their respective shares may bear to the aggregate of the distributable income, and such amounts shall be appropriately credited to each of said parties as deferred income, payable to them if and as funds for such purpose become available; provided, however, that prior to making any such deduction from distributable income, the trustees shall file a petition with the Wayne county probate court, or any court which may succeed to the jurisdiction of that court, requesting approval of such action, and they shall give notice of the date set for hearing thereon to each person then entitled to share in the distribution of income from said estate or trust by registered mail, directed to the last address designated by such persons in the manner hereinafter set forth."

The agreement also made provision for the distribution of the principal of the trusts on the termination thereof in accordance with the will, specifying in this connection that the rights of the heirs of Mrs. O'Donohue became vested as of the death of Frederick G. Clayton. It was also provided that the provisions of paragraph 9 of the will should be deemed to be satisfied by the transfer to the trustees of securities having a face or market value of $250,-000, such securities to be selected by the trustees from the general estate, and that the income therefrom should be distributed in accordance with the provisions above quoted relating to the income from the trust created by paragraph 12 of the will.

On the filing of the bill of complaint an order to show cause directed to the defendants was issued on August 16, 1948, in accordance with the prayer of the bill. On the same day an order was entered appointing Gerald Kane as guardian ad litem for the various persons, classes of persons, and interests, for the protection of which such appointment was requested by the plaintiffs, as hereinbefore set forth. Following his appointment the guardian ad litem

filed a report discussing at some length the various provisions of the agreement, particularly with reference to the distribution of the income from the estate.

On November 26, 1948, Louis A. Archambeau, a nephew of James H. Neubauer, filed objections to the settlement agreement, alleging therein that the guardian ad litem was not authorized to represent or appear for him and that he claimed a vested estate or at least a contingent interest in all of the property contemplated by the trusts created by the will. 'He made specific objection also to the payments of income to James H. Neubauer in accordance with the agreement, asserting that Mr. Neubauer was not entitled thereto. Mr. Archambeau is the son of Mr. Neubauer's sister, who died subsequently to the death of Mr. Clayton.

On the hearing of the matter before the trial court it was urged on behalf of Mr. Archambeau that he was a necessary party to any settlement of controversies arising in connection with the probating of the will of Mr. Clayton or the administration of the trusts created thereby. The trial court, however, rejected such claim, and entered a decree approving the proposed settlement. As the provisions of such decree indicate, it was expressly found by the trial judge from the testimony offered on the hearing that a good-faith controversy existed with reference to the construction of the will, and that the defendants named in the suit comprised all who were affected by such controversy. Archambeau has appealed, relying on the claims advanced by him before the circuit court.

It is the position of the appellees that the settlement agreement and all proceedings taken in connection with the approval thereof by the decree of the trial court were in accordance with the statutory provisions above cited, commonly referred to as the

Dodge act, now contained in the probate code.* That a good-faith controversy existed at the time of the agreement is scarcely open to question. It has been the policy of this State for many years to regard favorably the settlement of litigation in situations of the nature here involved. Thus in *Layer* v. *Layer,* 184 Mich 663, it was said:

"The courts, as a general rule, favor the settlement of disputed matters and controversies, and more particularly are the settlements of disputes among those interested in the estates of deceased persons favored. It is a well-settled rule of law in this State and many other States that a promise to forbear the contest of a will, when made in good faith, is a sufficient consideration to support a contract. *Conklin* v. *Conklin,* 165 Mich 571, 580."

To the same effect is *Baas* v. *Zinke,* 218 Mich 552, where the following language was used:

"Settlement of family difficulties or controversies arising out of the distribution of estates are favored, both at law and in equity, if at all reasonable and entered into understandingly."

The Dodge act sets forth a definite method of procedure in accordance with the principle declared in the *Layer Case.* Its purpose and scope is clearly indicated by its title as originally enacted (PA 1921, No 249), which read as follows:

"AN ACT to provide for the compromise, settlement or adjustment of any contest of the probate of any instrument propounded for probate as the last will of a deceased person or of any controversy arising concerning the interpretation, effect or validity of any such instrument, or arising in the administration of an estate under a will or under a trust created by a will, when there is or may be any per-

---

* PA 1939, No 288, as amended (CL 1948, § 701.1 *et seq.* [Stat Ann 1943 Rev § 27.3178(1) *et seq.*]).

son interested who is a minor or otherwise without legal capacity to act in person or whose present existence or whereabouts cannot be ascertained, or when there is any inalienable estate or interest or future contingent estate or interest which will or may be affected by such compromise, settlement or adjustment."

Section 2 of the act * requires the appointment of a guardian ad litem to represent minors, interested persons whose whereabouts or present existence cannot be ascertained, and, in proper cases, to represent future contingent interests and trusts. The legislature also saw fit to include in the final section of the act (section 4) as originally enacted a declaration that, if necessary to its validity or operative effect, it should be regarded as a grant of power and jurisdiction.† The intent is manifest. The rights of all interested in an estate who are under disability to represent themselves, and all interests of such a nature that those who will be the ultimate recipients may not be in being or cannot be ascertained, shall be protected by the court through the guardian ad litem. Such representation does not preclude, nor is it inconsistent with, further representation by a trustee, or by others having like interest with the one so represented. Certain phases of the Dodge act were under consideration in *Re Marxhausen's Estate,* 247 Mich 192; *Rose* v. *Southern Michigan National Bank,* 255 Mich 275; and *Dodge* v. *Detroit Trust Co.,* 300 Mich 575. See, also, *Metzner* v. *Newman,* 224 Mich 324 (33 ALR 98), and *In re Milner's Estate,* 324 Mich 269. In the *Rose Case* it was said:

"That an equity court has the power under our statute to modify a trust or in some circumstances

* Re-enacted as PA 1939, No 288, ch 2, § 46 (CL 1948, § 702.46 [Stat Ann 1943 Rev § 27.3178(116)]).—REPORTER.
† See PA 1939, No 288, ch 2, § 48 (CL 1948, § 702.48 [Stat Ann 1943 Rev § 27.3178(118)]).—REPORTER.

to extinguish it entirely with or without the consent of the trustee, there can be no doubt."

The court further pointed out that some trusts are of such nature that they may not be terminated until their objects and purposes have been accomplished. The case came within the exceptions, the trust being a "spendthrift trust". In the *Dodge Case,* p 614, it was held that "where a doubt as to what the law is has been settled by a compromise, a subsequent judicial decision by the highest court of the jurisdiction upholding the view adhered to by one of the parties affords no basis for a suit by him to upset the compromise." The prior decisions of the court in cases arising under the Dodge act indicate that the construction placed on its provisions is in keeping with the purpose sought to be accomplished.

Has the appellant such an interest under the will of the decedent that a valid settlement agreement in accordance with the provisions of the Dodge act may not be made except with his concurrence? It is his claim in substance that he has a vested interest acquired by inheritance from his mother who, as above noted, was living at the time of Mr. Clayton's death. Appellees contend that Archambeau has merely a possibility of an interest, that the heirs of James H. Neubauer cannot be determined until his death, and that it may not be assumed at this time that appellant will be one of such heirs and as such entitled to share in the distribution of the trust under paragraph 12 of the will. It is insisted in consequence that the interest that appellant has is a mere possibility of sharing in the distribution of property in the trust created by paragraph 12 of the will, that the persons who will on the termination of said trust receive the property therein were properly represented by the guardian ad litem, and that such rep-

resentation is in accord with the letter and the spirit of the Dodge act.

The suggestion is made by counsel for appellant in his brief that the will of Mr. Clayton should be construed as indicating an intent on his part that the residuary beneficiaries under the trust should be determined as of the time of his (Clayton's) death, and that the "heirs presumptive or apparent" of James H. Neubauer and of Mrs. O'Donohue were intended to take vested estates or interests as of such time. With this contention we are unable to agree. The language in the will does not tend to support it. Under the specific provisions title to the property did not vest in testator's heirs, or in the heirs of James H. Neubauer and Mrs. O'Donohue, but rather in the trustees named in the will. *Hay* v. *Hay,* 317 Mich 370, 408. Distribution is required to be made to those entitled thereto at the termination of the trust. It is, of course, within the range of possibilities that James H. Neubauer may leave children surviving him who, with his widow, will be his heirs. Whether the appellant will be one of those entitled to share in the distribution of the assets in the trust as provided in the will is wholly speculative.

It has been recognized in prior decisions of this Court that a person having such an interest in an estate as entitles him to contest a will may enter into an agreement to forbear from making any such contest. *Sellers* v. *Perry,* 191 Mich 619, 627; *Hansbarger* v. *Hansbarger,* 206 Mich 281. We do not think that appellant in the present case had such an interest. He could not, in other words, have contested the will. *Butts* v. *Ruthven,* 292 Mich 602. See, also, Annotation, 149 ALR 1270; 57 Am Jur, p 548 *et seq.*

It is conceded that under paragraph 9 of the will the trustees designated therein had discretionary authority to accumulate income from the stock in the F. G. Clayton Company to the extent of $250,-

000, or to decline to follow such course if they did not think it desirable. *Greenawalt's Estate,* 343 Pa 413, 417 (21 A2d 890). The Detroit Trust Company, successor trustees to the Security Trust Company, and Mr. Desenberg as successor to trustee Samuel T. Douglas, have indicated their belief that the accumulation of dividends on the stock is not required for the protection of the business of the F. G. Clayton Company. There is no suggestion that such conclusion was not reached in good faith.

As noted at the outset, the Detroit Trust Company as executor and as trustee filed the bill of complaint seeking the approval of the settlement agreement, and Mr. Desenberg also appears as a party plaintiff. It will also be borne in mind that the Detroit Trust Company is sole trustee under the provisions of paragraph 12 of the will. It does not appear that either trustee has any interest under the will other than in a representative capacity. It must be assumed, therefore, that their action in the proceeding was taken on behalf of the respective trusts created by paragraphs 9 and 12 of the will, and the beneficiaries and interests contemplated thereby. It thus appears that such beneficiaries, including appellant if he survives James H. Neubauer and is one of his heirs, were represented in the making of the agreement and in the subsequent proceedings not only by the guardian ad litem but by the trustees also. In discussing a somewhat analogous situation, the supreme court of Illinois in *Easton* v. *Hall,* 323 Ill 397, 424 (154 NE 216) said in part:

"The general rule that the interest of parties not before the court will not be bound by the decree is subject to the exception of the case where a party, though not before the court in person, is so far represented by others that his interest receives actual and efficient protection. The doctrine is especially applicable where the persons who are not before the

court are only possible parties not in being and
where the interest of all parties requires a decree
which will completely and finally dispose of all the
subject matter of the litigation.   In such cases the
doctrine of representation has been recognized,
by which, if persons are before the court who have
the same interest and are equally certain to bring
forward the entire merits of the question so as
to give the contingent interests effective protection,
the court will render a complete decree, which will
be binding upon the contingent interests in rever-
tion or remainder.   This doctrine was announced
in *Hale* v. *Hale,* 146 Ill 227 (33 NE 858, 20 LRA
247), and was followed in *McCampbell* v. *Mason,*
151 Ill 500 (38 NE 672), and *Longworth* v. *Duff,*
297 Ill 479 (130 NE 690).   In the last case it was
applied to living persons who were contingent re-
maindermen in case of the death of a life tenant
without descendants surviving him.   The cousins
of the testatrix are in precisely the same situation as
the nephew and niece and the grandnephews and
grandnieces, except that they are one or two degrees
further removed.   The protection of the previous es-
tates necessarily inures to the benefit of the contin-
gent interests of the cousins, and they are within the
doctrine of representation as it has been heretofore
decided.

"The possible widow of Charles S. Easton, other
than his present wife, is necessarily an unknown per-
son and her interest contingent.   Unborn children
cannot be made parties to litigation or their contin-
gent interests bound by the result of litigation to
which they were not parties and in which they were
not represented.   (*Mortimore* v. *Bashore,* 317 Ill
535 [148 NE 317].)   This contingent future interest,
—a mere expectancy in the trust estate,—would not
require the impossibility of making the holder a
party to every suit the trustees might be called upon
to bring or defend in order to preserve their trust.
As was said in *American Bible Society* v. *Price,* 115
Ill 623 (5 NE 126):  'The title is in the trustees, and

the duty is imposed upon them to protect and preserve this interest for whomsoever shall be ultimately entitled to it. They are parties to the suit, and they stand for and represent, in this litigation, the ownership ultimately entitled to this fund, and such ownership is bound by their representation.' *Green v. Grant,* 143 Ill 61 (32 NE 369, 18 LRA 381); *Temple v. Scott,* 143 Ill 290 (32 NE 366)."

The language above quoted by the Illinois court may, we think, be properly applied to the situation in the case at bar. It is the duty of the trustees under the will to protect the interests of all who are or may be beneficiaries under the trust provisions of the will. *Easton v. Hall, supra,* was followed in *Northern Trust Co. v. Thompson,* 336 Ill 137, 157 (168 NE 116). In *Geiger v. Geer,* 395 Ill 367, 381 (69 NE2d 848) it was said:

"Despite the age of Thomas L. Geiger, a prophesy as to who his heirs-at-law will be upon his eventual death would be sheer speculation in which we decline to indulge."

*Geiger v. Bardwell,* 255 Ill 320 (99 NE 582), may be differentiated on the facts from the other decisions by the Illinois court on the ground that the interests of contingent remaindermen, involved in the suit, were not represented by anyone. A similar situation was involved in *Crow Creek Gravel & Sand Co. v. Dooley,* 182 Ark 1009 (33 SW2d 369).

The supreme court of Missouri in *Naylor v. McRuer,* 248 Mo 423, 467 (154 SW 772) pointed out the difficulty involved in determining who will ultimately be the heirs of a living person, saying in part:

"If the law does not require an unborn child to be a party, then how could it require in this case the natural heirs of Mrs. Olmstead and Randall B. Naylor to be parties? The taking of the fee depends upon the contingency, both of the prior death of

Lucy Naylor and upon the prior death of either El-
fie Olmstead or Randall B. Naylor. When these
deaths shall occur who can say who will be the nat-
ural heirs of Mrs. Olmstead and Randall B. Naylor?
The four presently living children of the two latter
persons may all be dead, and another four, or even
another dozen, may then be *in esse*."

In the case at bar those who will participate in
the distribution of the trust fund under paragraph
12 of the will cannot be ascertained until the death
of James H. Neubauer. At the present time he has
no heirs. Certain persons, including the appellant,
may perhaps fall in that category but we cannot
guess or speculate that such will be the fact. Those
who will be the ultimate recipients of the testator's
bounty under the trust were represented by the trus-
tee in the making of the settlement agreement, and
subsequently thereto by the trustee and the guardian
ad litem. As before noted, there is no claim of
fraud. Under the circumstances appellant may not
claim that he has been deprived of any right to which
he was entitled. The proceeding followed the ex-
press provisions of the Dodge act, and each step
requisite to due process of law was observed. The
settlement agreement was not invalid because ap-
pellant did not join in its execution.

Appellant further seeks to question the fairness
of the settlement agreement, claiming in substance
that James H. Neubauer will benefit thereunder at
the expense of the ultimate beneficiaries under the
trust. It appears, however, that Mr. Neubauer's
rights were challenged in the litigation that brought
about the execution of the agreement. It appears
that he was not an employee of the F. G. Clayton
Company at the time of the testator's death. The
record does not contain the pleadings in that litiga-
tion. Neither have we any detailed statement indi-
cating the precise issue. However, the finding of the

trial judge that a "good faith" controversy existed is not challenged. In the agreement certain concessions were made to the heirs of Mrs. O'Donohue, apparently in derogation of the rights of Mr. Neubauer. That it was for the benefit of all parties interested in the estate, presently or prospectively, to avoid litigation that might perhaps prove expensive and protracted is obvious.

The provisions of the will with reference to the disposition of a portion of the income were lacking in certainty and definiteness. Counsel for appellees indicate the situation by the following statement in their brief:

"There is no provision in paragraph 9 of decedent's will for distribution of income from the Clayton Company stock over and above the dividends which might be accumulated, nor for the distribution of income from securities having a face value of $250,000 which were to be held by the trustees nominated under that paragraph. This deficiency would provide fertile ground for litigation."

The question was presented, in consequence, as to the rule that should be adopted to govern the distribution, assuming that the testator intended that it should be disposed of under the will. Obviously the parties ultimately agreed to accept the theory of the so-called Massachusetts rule, and to provide for payment to the life beneficiaries. Counsel agree that whether such rule is preferable to the rule formerly followed by the New York courts, under which income derived from property that is used in the payment of legacies and administration expense is to be added to principal and ultimately distributed accordingly, has not been settled in this State. It is unnecessary in this case to pass on the conflicting theories. For the purposes of the agreement the parties adopted the theory favoring the

life beneficiaries, and all parties to such agreement, including the various interests represented thereby, are bound. *Dodge* v. *Detroit Trust Co., supra* (p 614). We concur in the holding of the trial court that the agreement was fair from the standpoint of all parties concerned.

The conclusions reached with reference to the questions above discussed are decisive of the case. It is unnecessary to discuss other matters which counsel have raised in their briefs and on the oral argument. The decree of the trial court is affirmed, with costs to appellees.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.