METZNER *v.* NEWMAN.

1. INFANTS — COURTS — EQUITY HAS JURISDICTION TO DETERMINE RIGHTS OF INFANTS.

Where a chancery court has jurisdiction of the subject-matter and parties, some of whom are infants, it may pass upon and adjudicate the rights and equities of the infants and the decree will be binding as to them.

2. SAME—SETTLEMENT OF INFANTS' RIGHTS BINDING IF APPROVED BY COURT.

Where infants' property rights are involved in litigation, the general guardian or guardian *ad litem* may negotiate for a compromise of the litigation, and if the court approves it, after an examination of the facts, the judgment or decree will be binding upon the infants.

3. SAME—WILLS—COMPROMISE AND SETTLEMENT—EVIDENCE—SUFFICIENCY.

In a will contest case, in which the rights of infants were

involved, the finding of the chancellor that a compromise settlement was made in good faith and that it was in the interest of the infant legatees, *held*, justified by the record.

4. SAME—COMPENSATION OF GUARDIAN AD LITEM TO BE DETERMINED BY PROBATE COURT.

The question of the compensation of the guardian *ad litem* is one for the probate court when the case is up for final disposition.

Appeal from Gratiot; Jayne (Ira W.), J., presiding. Submitted April 19, 1923. (Docket No. 96.) Decided October 1, 1923.

Bill by Maxine C. Metzner and another, by James G. Kress, their next friend, against Helen Newman and others to sustain a compromise settlement of the estate of Michael Pollasky, deceased. From a decree for plaintiffs, defendant Fred M. Breen, guardian *ad litem* of certain infant heirs, appeals. Affirmed.

*James G. Kress, William A. Bahlke,* and *Hugo E. Braun,* for plaintiffs and certain defendants.

*Butterfield, Keeney & Amberg* and *Fred N. Searl,* for defendant Michigan Trust Company, special administrator.

*Fred M. Breen, in pro. per.*

BIRD, J. Michael Pollasky was a long time, well-to-do resident of Alma. He died in May, 1917, at the age of 82. He left surviving him four children, viz.: Max E., Marcus and Frank E. Pollasky and Anna Messinger. He also left him surviving four great-grandchildren, who are infants, namely: Helen Newman, Elaine Newman, Maxine Cecil Metzner and Robert M. Soule, Jr. He disposed of his property by will in the following manner:

"I, Michael Pollasky, of the city of Alma, county of Gratiot and State of Michigan, being of sound and

disposing mind and memory, do make, publish and declare the following to be my last will and testament, hereby revoking any and all wills by me at any time heretofore made.

"I.

"I will and direct that all of my just debts, funeral expenses and the expenses of administering my estate be paid in full.

"II.

"I give and bequeath to the Jewish Orphan Asylum, in the city of Cleveland and State of Ohio, the sum of one thousand (1,000.00) dollars.

"III.

"I give and bequeath to the Hebrew Union College, in the city of Cincinnati and State of Ohio, the sum of two hundred fifty ($250.00) dollars.

"IV.

"I will and direct that the expenses and legacies above provided shall be paid, if possible, from the money which will be received at my death from Pisgah Lodge Number Thirty-four, I. O. B. B., of which I am a member, and if said money is not sufficient to pay the same, then they shall be paid by my executors from the residue of my estate.

"V.

"I give and bequeath to Alma Lodge Number Two hundred forty-four F. & A. M., the sum of two hundred forty-four ($244.00) dollars.

"VI.

"I give and bequeath to my granddaughters, Rosy Messinger, Sadie Messinger, Grace Soule, Leontine Messinger, Gladys Newman and Vera Metzner, the sum of one thousand ($1,000.00) dollars each.

"VII.

"I give and bequeath to my grandsons, Louis and Norman Pollasky, the sum of one thousand ($1,000.00) dollars each.

"VIII.

"I give and bequeath to my niece, Goldie Turnberg, the sum of one thousand ($1,000.00) dollars.

"IX.

"I give and bequeath to the United Jewish Charities, in the city of Detroit and State of Michigan, the sum of one thousand ($1,000.00) dollars.

"X.

"To my son, Max E. Pollasky, I give and bequeath my gold watch, gold-headed cane, gold-headed umbrella and my gold Past Master's Jewel, and all other personal effects.

"XI.

"I give and bequeath to my daughter, Anna Messinger, of Alma, Michigan, fifteen (15) shares of the capital stock of the Republic Motor Truck Company.

"I give and bequeath to my daughter-in-law, Celia L. Pollasky, fifteen (15) shares of the capital stock of the Republic Motor Truck Company.

"I give and bequeath to my niece, Goldie Turnberg, of Chicago, Illinois, fifteen (15) shares of the capital stock of the Republic Motor Truck Company.

"In the event that I shall dispose of my holdings of stock in the Republic Motor Truck Company during my lifetime, I direct that there shall be paid to the three (3) beneficiaries mentioned in this paragraph of my will the equivalent, in cash, of the foregoing legacies, the amount thereof to be determined by the market value of said stock at the date of my decease.

"XII.

"All of the rest, residue and remainder of my estate, both real and personal, of whatsoever name or nature, I give, devise and bequeath to my son, Max E. Pollasky, and Security Trust Company of Detroit, Michigan, with full power to sell, mortgage or pledge the same, or any part or parts thereof, including any and all real estate, at public or private sale, *upon trust nevertheless*, to the ends, intents and purposes following:

"(*a*)  To pay the costs and expenses of this trust.

"(*b*)  To invest and re-invest said trust estate as in their judgment may seem best, in good real estate securities, and to divide and distribute the same, with the accumulation thereon, in equal shares, among my great-grandchildren, Helen Newman, Elaine Newman, Robert Soule, Jr., and Maxine Cecil Metzner, when the youngest thereof arrives at the age of twenty-one (21) years; the issue of any or all of my said great-grandchildren to take by representation, the share or shares their parent would have taken if then living.

"XIII.

"I have made no provision for my sons, Max E.

Pollasky, Frank E. Pollasky and Marcus E. Pollasky in this my last will, for the reason that I have fully provided for them during my lifetime.

"XIV.

"I have made no provision for my granddaughter, Bernice Pollasky, in this my last will, for the reason that I feel that her father has fully provided for her.

"XV.

"I hereby nominate and appoint my eldest son, Max E. Pollasky, and Rabbi Leo M. Franklin, both of the city of Detroit, State of Michigan, executors of this my last will and testament, and direct that no bond be required of them in that capacity.

"In the event of the death or resignation of either of my executors above named before the completion of their trust, I direct that 'the Security Trust Company, of Detroit, Michigan, shall be named and appointed co-executor in his stead.

"In the event of the death or resignation of both of my said executors before the completion of their trust, I direct that said Security Trust Company shall be appointed sole executor of this my last will and testament."

This will was offered for probate by Max E. Pollasky, one of the executors named therein, and was duly allowed by the probate court of Gratiot county. Three of the children of testator, namely, Frank E. and Marcus Pollasky and Anna Messinger, were not content with the provisions of the will and its admission to probate. They filed objections and perfected an appeal to the circuit court. The objections filed raise the questions of incompetency, duress and undue influence of the testator. While the appeal was pending in the circuit court the Pollasky family had a conference. Out of this conference came a compromise agreement and a stipulation for a settlement of the circuit court appeal. The compromise agreement provided, in substance, that all specific legacies should be paid; that out of the residue certain

costs and attorney fees should be paid and the balance should be divided equally among testator's four children and his four great-grandchildren. This settlement was agreed to and signed by all the legatees, both special and general. A stipulation was then signed by all the interested parties consenting that said cause be dismissed out of the circuit court and certified back to the probate court, subject to the compromise agreement. This stipulation was filed in the circuit court with the agreement and an order was made dismissing the cause and ordering that the case be certified back to the probate court, subject to the compromise agreement.

The executors named in the will having declined to accept the trust, the Michigan Trust Company was appointed administrator with the will annexed. It proceeded to administer the estate in accordance with the will as modified by the compromise agreement. After discharging its trust it filed its final account in the probate court for Gratiot county, and a day of hearing was fixed. Before the hearing appellant Breen was appointed guardian *ad litem* of the four great-grandchildren. After an examination of what had been done in the premises Mr. Breen filed objections to the final account. A hearing convinced the probate court that the compromise agreement was not valid and it, therefore, refused to allow the final account, in so far as it had administered the estate in accordance with the compromise agreement. Among the reasons for refusing to allow the account was that no court had passed upon the compromise agreement and pronounced it a fair settlement and one that was for the best interest of the infant legatees. Acting upon this suggestion two of the infant legatees, by their next friend, filed this bill on the chancery side of the court, setting up all of the proceedings and praying for a decree, determining that the compromise

settlement was a fair one and one that was for the best interests of the infant legatees. After the pleadings were perfected a hearing was had. Plaintiffs made proof of the proceedings theretofore had in the premises. Considerable oral and documentary proof was taken. Some of the parents of the infant legatees testified for plaintiffs and expressed their approval of the compromise agreement. The defendants offered no testimony. After argument and consideration the chancellor concluded that the compromise agreement should be approved and he found the agreement was a fair one, under all the circumstances, and that such settlement was for the best interests of the infant legatees. Appellant Breen, guardian *ad litem* of the infants, was not pleased with the conclusion reached and he has appealed to this court.

Appellant Breen contends:

(1) That the chancery court has no inherent power and jurisdiction to entertain this proceeding.

(2) That plaintiffs did not establish that the will contest was a good-faith contest.

(3) That Act No. 249, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 13818 [4-7]), authorizing compromise of will cases, is unconstitutional as to this case, because it disturbs rights which vested before the act was passed.

1. An examination of the authorities upon the question of the jurisdiction of the court leads us to the conclusion that when a chancery court has jurisdiction of the subject-matter and parties, some of whom are infants, it may pass upon and adjudicate the rights and equities of the infants and the decree will be binding as to them. We are also of the opinion that when infants' property rights are involved in litigation the general guardian or guardian *ad litem* may negotiate for a compromise of the litigation, and if the court approves it, after an examination of the facts, the

judgment or decree will be binding upon the infants. After a somewhat extended research we have found no case which disputes this rule of procedure. Appellant cites several authorities which he relies upon to sustain his contention, but those are cases which consider the power of the court of chancery to order a sale or conversion of the property of infants which was not involved in litigation. If appellant's contention were the law it would be difficult for a chancery court to dispose of suits involving the rights of infants. While it is generally held that general guardians and guardians *ad litem* may not compromise pending litigation so as to be binding upon the infant it is just as generally held that when the terms of the compromise are examined by the court and approved, it is legal and binding. Indeed, if this were not true, as one of the counsel has well suggested, then infants would have fewer rights than adults when their property rights were involved in litigation.

Our chancery court has, from its inception, been the protector and guardian of infants and their property rights. By statute some of this jurisdiction is shared by our probate courts. Our chancery courts acquired this right and jurisdiction by the adoption of the common law. 3 Comp. Laws 1915, § 12300. The English chancery courts exercised the right to approve or disapprove of suggested compromises in litigation wherein the property rights of infants were involved. *Brooke* v. *Lord Mostyn*, 33 Beav. 457 (55 Eng. Rep. 445) ; *Lippiat* v. *Holley*, 1 Beav. 423 (48 Eng. Rep. 1004). In the case first cited, where a suit had been brought in chancery to have a compromise settlement approved, the court said in part:

"If, in the course of a suit or any other proceeding in this court, a compromise is proposed between one or more adult persons, and one or more infants, the court takes steps to ascertain whether it will be for

the benefit of the infant or infants that the proposed compromise should be accepted. Formerly this was done by a reference to the master to ascertain that fact, at present it is done sometimes by reference into chambers, and sometimes without adopting that course, if the judge, after considering the evidence presented to the court, is of opinion that, without further investigation, it is sufficient to enable him to decide on the matter. In dealing with such a question, it is the duty of a judge (and, as I believe, a duty always performed by him) to consider carefully the facts, and to determine, upon such consideration, what is best to be done for the infant, in like manner as a father would act for a son in similar circumstance. No doubt, in such cases, especially when the result of this evidence is doubtful, the court is much influenced by the opinion of the nearest relatives and guardians of the infant, who have no interest in the matter except to promote the advantage of the child. When this has been done, and the court has decided in favor of the arrangement, and the arrangement has been thereupon carried into execution, the whole thing is concluded."

This case was reversed on a question of fact in the appellate court, but on appeal to the house of lords the decision of the lower court was affirmed.

The Federal court has recognized this rule in *Thompson* v. *Maxwell Land Grant Co.*, 168 U. S. 451 (18 Sup. Ct. 121). This case reviewed an appeal from the supreme court of the territory of New Mexico. The litigation involved property rights of infants which had been settled by a compromise agreement. The compromise agreement was attacked. In sustaining it Mr. Justice Brewer said in part:

"It would be strange, indeed, if, when those authorized to represent minors, acting in good faith, make a settlement of claims in their behalf, and such settlement is submitted to the proper tribunal, and after examination by that tribunal is found to be advantageous to the minors and approved by a decree entered of record, such settlement and decree can thereafter be

set aside and held for naught on the ground that subsequent disclosures and changed conditions make it obvious that the settlement was not in fact for the interests of the minors, and that it would have been better for them to have retained rather than compromised their claims. If such a rule ever comes to be recognized it will work injury rather than benefit to the interests of minors, for no one will make any settlement of such claims for fear that it may thereafter be repudiated. The best interests of minors require that things that are done in their behalf, honestly, fairly, upon proper investigation and with the approval of the appropriate tribunal, shall be held as binding upon them as similar action taken by adults."

In considering property rights of infants in litigation the following rule is laid down in 14 R. C. L. p. 288:

"It is usually held that the next friend cannot enter a satisfaction of the judgment, and still less can he bind the infant by a compromise of his claims. If a compromise should seem desirable, the proper course is for him to submit it to the court, by whom he was appointed or permitted to act, for its approval and sanction. When so approved, it will be valid and binding;" citing *Missouri-Pacific R. Co.* v. *Lasca,* 79 Kan. 311 (99 Pac. 616, 21 L. R. A. [N. S.] 338, 17 Ann. Cas. 605); *Tripp* v. *Gifford,* 155 Mass. 108 (29 N. E. 208, 31 Am. St. Rep. 530); *Fletcher* v. *Parker,* 53 W. Va. 422 (44 S. E. 422, 97 Am. St. Rep. 991).

On this subject Cyc. observes:

"In the exercise of its general protection over the interests of infants the court may grant to an infant relief not asked for in the pleadings. A court of chancery has the right to compromise the rights of minors in proper cases where they are parties." 22 Cyc. p. 633; citing *Wilson* v. *Schaefer,* 107 Tenn. 300 (64 S. W. 208); *Reynolds* v. *Brandon,* 3 Heisk. (Tenn.) 593; *Rucker* v. *Moore,* 1 Heisk. (Tenn.) 726.

"A next friend cannot compound a judgment, nor

release nor discharge a cause of action out of court. He has no power to compromise or settle without the express sanction of the court.    But a compromise may be enforced by the court when made for the infants' benefit."    14 Enc. Pl. & Prac. p. 1040.

The right to compromise a will contest where there are infant legatees has been passed upon by the Illinois court.    *Williams* v. *Williams,* 204 Ill. 44 (68 N. E. 449) ; *Matthews* v. *Doner,* 292 Ill. 592 (127 N. E. 137).

In the latter case the court said:

"It is the rule, likewise, that a court of equity may authorize a compromise of the minors' litigation, where the evidence shows that the case is a proper one for such compromise.    Great care should be exercised by the court in such a case, for the reason that the minor is a ward of the court and entitled to its tenderest consideration.    However, when it is shown by the evidence to be for the best interests of the minor, such compromise may be authorized by the court, and when the decree entered therein is properly before a court of review, that court will inquire into the evidence to determine whether the finding of the chancellor that the compromise is for the best interests of the minor is sustained by the evidence."

This court has, upon several occasions, expressed itself favorably upon the settlement of litigation which involves the family relation.

In *Layer* v. *Layer,* 184 Mich. 671, the court said:

"The courts, as a general rule, favor the settlement of disputed matters and controversies, and more particularly are the settlements of disputes among those interested in the estate of deceased persons favored. It is a well-settled rule of law in this State, and many other States, that a promise to forbear the contest of a will, when made in good faith, is a sufficient consideration to support a contract.    *Conklin* v. *Conklin,* 165 Mich. 571."

In *Baas* v. *Zinke,* 218 Mich. 552, it was said:

"Settlement of family difficulties or controversies arising out of the distribution of estates are favored,

both at law and in equity, if at all reasonable and entered into understandingly."

This court having looked with favor upon the adjustment of the differences of adult relatives with reference to the settlement of estates will also look favorably upon the adjustment of differences in the family over the settlement of estates where infant legatees are interested, provided the proposed compromise of the differences is submitted to the court and a finding made that the settlement and compromise are for the best interests of the infants.

2. It is contended that the facts disclosed upon the hearing do not justify a conclusion that the will contest was made in good faith nor that the compromise was for the best interests of the infants. The chancellor had before him at the hearing the fact that all of the adult interested parties were in favor of the compromise and that the parents of the infants, who were legatees, were also in favor of it. Mr. Newman, father of the two Newman children, testified and gave it as his opinion that the proposed settlement was for the best interests, financially, of his children, and stated the reasons why. Communications from the parents of the other two infants indicated they too favored the compromise. The chancellor also had before him the testimony of Frank E. Pollasky, one of the contestants, with whom the testator lived for many years. He gave testimony bearing on the physical and mental condition of his father. The chancellor was fully informed as to the will, the amount of the estate and the amount which it was proposed to divide between the four children and the four great-grandchildren. He knew exactly what the great-grandchildren would lose by reason of the compromise. In fact, the chancellor had before him much of the testimony which would have been given in a contest of the will. With all these and other facts and circum-

stances before him the chancellor concluded the contest was made in good faith and that the compromise settlement was made in good faith.   He further found that the compromise settlement was in the interest of the infant legatees, and we are not of the opinion that these conclusions arrived at should be disturbed.

3. Having reached the conclusion that the court of chancery had the jurisdiction to determine the propriety of the proposed compromise it will be unnecessary for us to consider the validity of Act No. 249, Pub. Acts 1921.

4. The question of the status of appellant Breen as guardian *ad litem* has been discussed, also his compensation.   Counsel have paid their most cordial respects to each other on these questions.   It will suffice to say of the first question that the children's interest appears to have been very well taken care of, not only in this court, but in the other courts.   When the case reaches the probate court for final disposition the question of the amount of his compensation can be disposed of.

The decree approving the compromise settlement will be affirmed by this court.   No costs will be allowed any of the parties in this court.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.