*In re* REEDER ESTATE.

OPINION OF THE COURT.

1. WILLS—CONTEST PROCEEDING—EQUITY.

A will contest proceeding instituted in the circuit court is purely equitable, and the chancellor hearing the case is invested with plenary jurisdiction over the subject matter, plenary jurisdiction over all interested parties competent, and plenary jurisdiction over all other duly represented parties and interests, whether such parties are under legal disability or unknown, or are uncertain or indefinite.

2. SAME—CIRCUIT COURT—JURISDICTION—WILL CONTEST PROCEEDING.

The chancellor hearing a will contest proceeding in the circuit court has jurisdiction conferred not only by statute, but also by the inherent powers of equity, to determine whether an instrument offered as a will is contested in good faith, and, if so, whether a compromise of the contest proposed under the statute should be approved and executed by the legal representatives of all whose interests equity should protect (CL 1948, §§ 702.45–702.48).

3. EXECUTORS AND ADMINISTRATORS—POWERS—EQUITY.

No representative of an estate or other fiduciary officer, whether appointed by order of court, by will, by trust agreement or other legal instrument, or by election to executive office and enabling statute, may effectively substitute his or its judgment of what is best done by way of compromise on behalf of the beneficially interested persons or parties he represents for the judgment of an equity court (CL 1948, §§ 702.45–702.48).

4. ATTORNEY GENERAL—CHARITABLE TRUST—REPRESENTATION OF BENEFICIARIES.

The attorney general, when representing the beneficiaries of a charitable trust and the people pursuant to statute, is a supervisory trustee (PA 1961, No 101, as amended by PA 1965, No 353).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 57 Am Jur, Wills §§ 757, 764 *et seq.*
[3] 57 Am Jur, Wills § 995 *et seq.*
[4, 5, 7–9] 15 Am Jur 2d, Charities § 119 *et seq.*
[6] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

5. Same—Will Contest Settlement—Powers.

The attorney general, when representing beneficiaries of a charitable trust in a will contest, does not have the power of an adult competent heir or legatee to prevent a compromise agreement by refusing to consent to it (PA 1915, No 280; PA 1917, No 207, as amended; PA 1961, No 101, as amended).

6. Costs—Attorney General—Approval of Will Contest Settlement.

No costs are allowed in an appeal by the attorney general, representing beneficiaries of a charitable trust, from an order of the circuit court approving a will contest settlement agreed to by all contestants except the attorney general, who objected and asserted that the settlement could not have effect over his objection.

Dissenting Opinion.

Souris, J.

7. Wills—Contests—Compromise—Consent.

*The circuit court has no jurisdiction to approve a will contest settlement agreement under the statute unless the agreement has been signed by all those whose interests may be limited or diminished by the agreement if consummated (CL 1948, §§ 702.45–702.48).*

8. Same—Charitable Trust—Beneficiaries—Attorney General.

*The uncertain and indefinite beneficiaries of a charitable trust established by a will have beneficial interests which may be affected by a proposed settlement agreement in a will contest proceeding under the statute, and their interests are represented by the attorney general and the prosecuting attorney (CL 1948, §§ 702.45–702.48; PA 1915, No 280; PA 1961, No 101).*

9. Same—Contest—Settlement Agreement—Attorney General—Approval.

*The chancellor had no jurisdiction to entertain a petition for approval of a compromise agreement proposed by the other beneficially interested parties in a will contest proceeding, where the attorney general and prosecuting attorney, representing the uncertain and indefinite beneficiaries of a charitable trust, refused to approve the agreement (CL 1948, §§ 702.45–702.48; PA 1915, No 280; PA 1961, No 101).*

Appeal from Genesee, Papp (Elza A.), J. Submitted November 9, 1967. (Calendar No. 28, Docket No. 51,698.) Decided May 6, 1968.

Charles Mosier and Philip Elliott, executors-nominate, petitioned for probate of a will of Pansy Lee Reeder dated April 17, 1961. Genesee Merchants Bank & Trust Company, executor-nominate, petitioned for the probate of a will of Pansy Lee Reeder dated October 25, 1958. The will contest was certified from probate court to circuit court by petition of the Attorney General. A settlement was entered into by all devisees, legatees, and beneficiaries named in both wills, and by the heirs-at-law, Urah Wortley, Eathel Crockford, Ward Baine, Ruth Smedley, and Russell Grotemat but was not approved by the Attorney General or the prosecuting attorney. Circuit court approved the settlement. Attorney General appeals. Affirmed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edwin M. Bladen, Stanley D. Steinborn, Stewart H. Freeman,* and *A. C. Stoddard,* Assistant Attorneys General, *James E. Burns,* Special Assistant Attorney General, and *Robert F. Leonard,* Prosecuting Attorney, for intervenor-appellant.

*L. Keith Borgerson,* for Young Women's Christian Association of Flint.

*Winegarden, Booth & Ricker,* for American Cancer Society and Young Men's Christian Association of Flint.

*Cline & Cline,* for Shriners Hospitals for Crippled Children.

*Thomas C. Yeotis,* for National Foundation.

*Gault, Davison & Bowers,* for Tall Pine Council, Boy Scouts of America.

*Guy W. Selby,* for Flint Board of Education.

*Bellairs & Dean,* for Fair Winds Girl Scout Council, Inc., and Red Feather Fund of Flint and Genesee County.

*Fred S. Flick,* for First Presbyterian Church of Flint.

*Roscoe O. Bonisteel* and *Roscoe O. Bonisteel, Jr.,* for Grand Lodge of Free & Accepted Masons of Michigan.

*M. Bushnell Trembley,* for Genesee Merchants Bank & Trust Company.

*Dickinson, Wright, McKean & Cudlip,* for Mercersberg Academy.

*Richard M. Shuster,* for heirs.

PER CURIAM. The essential facts and issues, presented by petition addressed to the circuit court pursuant to section 2 of the so-called Dodge act of 1921 (PA 1921, No 249), which act was re-enacted and superseded by part of the probate code of 1939, (CL 1948, §§ 702.45–702.48 [Stat Ann 1962 Rev §§ 27.3178(115)–27.3178(118)]), appear comprehensively in the first seven paragraphs of the chancellor's opinion. Such paragraphs read:

"This is a contest over the validity of the purported last will and testament of Pansy Lee Reeder,

dated April 17, 1961.[1]  The will contest was certified to this court on 19th day of March A. D. 1964.  This will left the bulk of a two million dollar estate to Mrs. Esther Melin, a practical nurse, who was in her employ at the time of the execution of the 1961 will and until the time of her death.  On October 25, 1958 Pansy Lee Reeder had executed a previous will which left the bulk of the estate in the trust for charities.

"Pansy Lee Reeder died on the 13th day of December, 1963, at the age of 78 years.  Separate petitions for the probate of the 1961 will and the 1958 will were filed in the Genesee county probate court.  The attorney general of the State of Michigan appeared and filed objections to the 1961 will, alleging fraud, undue influence, improper execution, and lack of testamentary capacity.  Several of the charitable beneficiaries named in the 1961 and the 1958 will joined in the attorney general's objections.  All of the charitable beneficiaries named in the 1961 will and 1958 will appeared in the case.  Substantial discovery has been had both here and in probate court.  The final pretrial has been held.  The depositions taken are part of the court file.

"A stipulation for the settlement of the contest has been negotiated and entered into, not only by all of the devisees, legatees and beneficiaries named in both the 1958 and 1961 wills, but also by all of the heirs at law of Pansy Lee Reeder.  This stipulation has been approved by the corporate trustee named in the 1958 will.  No trust was created under the terms of the 1961 will.

---

[1] The will contest was certified to circuit in March of 1964. Thorough discovery proceedings ensued.  The Dodge act petition for approval of settlement was filed in circuit September 17, 1965 and framed October 18, 1965 as to presently appealed issues this way:

"II. The attorney general of the State of Michigan is the proper representative of the people of the State of Michigan and the uncertain and indefinite beneficiaries in charitable trusts including the one created in the 1958 will of Pansy Lee Reeder."

"III. No settlement may be made without the approval and agreement of the attorney general acting on behalf of the uncertain and indefinite charitable beneficiaries."

"The stipulation for settlement has been submitted to the court in accordance with paragraph 14 of the stipulation. This matter was brought on for hearing by counsel for the heirs at law of Pansy Lee Reeder as determined by the Genesee county probate court. Notice was given by the counsel for the heirs at law to all parties. Paragraph 13 of the stipulation for settlement provides that all the parties signing the stipulation waive notice of any hearing on the submission of the stipulation for approval. Counsel for several of the signatories to the stipulation appeared at the hearing which was held October 18, 1965 and the court was advised that they joined in the submission of the stipulation.

"The attorney general and the Genesee county prosecuting attorney have continuously refused to sign the stipulation. At the time of the hearing representatives of the attorney general's office appeared and argued in opposition to the settlement as contained in this stipulation. Arguments pro and con on this settlement and whether or not it could be approved over the objection of the attorney general were also presented at the final pretrial.

"The court is faced with two basic questions in this case:

"(1) Whether the court has the power and authority to approve the proposed settlement over the objection of the attorney general and the prosecuting attorney.

"(2) Whether the terms of the proposed settlement are such that they ought to be approved by the court under the circumstances of the case.

"The attorney general asserts CL 1948, §§ 554.351, 554.352 (Stat Ann 1953 Rev §§ 26.1191, 26.1192) as authority for his position, that he is a proper party to this will contest and that no settlement of this will contest can be made without his approval."

For those interested in further detail of the differences between the testaments of 1958 and 1961, there appears by appendix, *infra*, appellees' com-

prehensive column by column comparison of the two.

Several critical aspects of the stated contentions of the attorney general and prosecuting attorney should be kept in constant mind. They suggest persuasively that the chancellor did not err.

The first is that this proceeding, having been instituted in circuit rather than probate,[2] is purely equitable. With or without aid of the Dodge act, the chancellor was invested with plenary jurisdiction over the subject matter, plenary jurisdiction over all interested parties competent, and plenary jurisdiction over all other duly represented parties in interest, whether such parties are under legal disability or unknown, or are "uncertain or indefinite." Such jurisdiction perforce included and now includes all those for whom the attorney general has appeared by authority of statute. Clothed with that jurisdiction, the chancellor was empowered to proceed with equity's assigned task, that of determining whether the instrument in question (of 1961) was contested in good faith, and, if so, whether the compromise of that contest as proposed should be approved and executed by the then-before-the-court

---

[2] Consider the alternative forums (probate or chancery) that are provided by the second sentence of former section 2 of the Dodge act (now officially cited as CL 1948, § 702.46):

"Such agreement shall be submitted to the probate court having jurisdiction of the probate of such will and the administration of such estate or trust, or to the circuit court in chancery of the proper county, for the approval thereof and the authorizing of the entering into and execution thereof by the executor or executors named in such will, or the administrator with the will annexed, and by the qualified trustee or trustees named in such will of every trust created by such will which will be affected by such compromise or settlement, and by the guardian of each and every person who shall be an infant or otherwise incompetent to act in person for whom a guardian has been appointed and qualified and who shall have an estate or interest of any kind or nature aforesaid which will or may be limited or diminished as aforesaid, and by the person or persons named in such will as trustees of every such trust of which no trustee has as yet qualified or by a guardian ad litem appointed by the court to represent such trust, as hereinafter provided."

legal representatives of all whose interests equity should protect.

The jurisdiction below was conferred, not only by the Dodge act, but also by the inherent powers of equity. Section 48 of the probate code (CL 1948, § 702.48), formerly section 4 of the Dodge act, provides expressly that "The provisions of sections 45 through 47 of this chapter is [are, sic] intended to provide a definite method for the exercise of the existing power and jurisdiction of courts of probate and of chancery in addition to and in nowise in exclusion of any other regular method or methods of exercising such power and jurisdiction; but nevertheless if necessary to the validity or operative effect of this act or any part thereof, the same shall be deemed to be a grant of power and jurisdiction." That the jurisdiction conferred by the Dodge act is not exclusive appears with clarity in the unanimous opinion of *Metzner* v. *Newman* (1923), 224 Mich 324. See *Dodge* v. *Detroit Trust Co.* (1942), 300 Mich 575, wherein the Court reviewed the background and litigation growing out of the John F. Dodge estate and the reasons for enactment and applicability of the Dodge act itself. At page 604 the Court found occasion to refer to *Metzner* v. *Newman* in these words:

"In passing, we call attention to *Metzner* v. *Newman* (1923), 224 Mich 324 (33 ALR 98), where we held that the chancery court had jurisdiction, independent of that statute [the Dodge act], to adjudicate the rights and equities of infants by approving, as in the best interests of such minors, a settlement agreement compromising litigation involving a will contest."

The second is that no representative or other fiduciary officer, whether appointed by order of court, by will, by trust agreement or other legal instru-

ment, or as here by election to executive office and enabling statute, may in any equity proceeding effectively substitute his or its judgment of what by way of compromise is best done, on behalf of the beneficially interested persons or parties thus represented, for the judgment of the equity court itself. Here this equity court was duly called upon to perform an assigned task of judicial power, a power reserved exclusively to the third branch by Const 1963, art 3, § 2. True, any such representative or fiduciary may freely litigate the merits and then review the judgment of the court, but he may not usurp or otherwise defeat the vested judicial power without offense to the principle of separation of powers. Nor may the legislature vest him with any such power. See T. M. KAVANAGH, J., writing for the Court in *Gray* v. *Clerk of Common Pleas Court* (1962), 366 Mich 588, 595, and the flat declaration of Justices COOLEY, CAMPBELL, MARSTON, and GRAVES in *Allor* v. *Wayne County Auditors* (1880), 43 Mich 76, 96, 97:

"Upon that subject it is for most purposes enough to say that no court, in the exercise of its functions, can be lawfully subjected to the control or interference of any executive or ministerial authority, or can receive directions for any purpose except from such other courts as are authorized by the Constitution to have 'superintending control over inferior courts.' No court has a right to allow any other interference or to submit to it."

These limitations upon the authority of appointed representatives of others are demonstrated best, perhaps, by the exhaustive opinion of the chancellor which the Court adopted in *Detroit* v. *Detroit United Railway* (1924), 226 Mich 354, referring particularly to the controlling jurisdiction of equity as regards trusts, trustees, and beneficiaries of trusts commenc-

ing on page 361, or, possibly, by this summary which appears in another Dodge act proceeding, *Detroit Trust Company* v. *Neubauer* (1949), 325 Mich 319, 335, 336:

"The rights of all interested in an estate who are under disability to represent themselves, and all interests of such a nature that those who will be the ultimate recipients may not be in being or cannot be ascertained, shall be protected by the court through the guardian *ad litem*. Such representation does not preclude, nor is it inconsistent with, further representation by a trustee, or by others having like interest with the one so represented. Certain phases of the Dodge act were under consideration in *In re Marxhausen's Estate*, 247 Mich 192; *Rose* v. *Southern Michigan National Bank*, 255 Mich 275; and *Dodge* v. *Detroit Trust Co.*, 300 Mich 575. See, also, *Metzner* v. *Newman*, 224 Mich 324 (33 ALR 98), and *In re Milner's Estate*, 324 Mich 269. In the *Rose Case* it was said:

" 'That an equity court has the power under our statute to modify a trust or in some circumstances to extinguish it entirely with or without the consent of the trustee, there can be no doubt.' "[3]

In *In re Dissolution of Detroit Metropolitan Corporation* (1939), 289 Mich 358, 377 it was said that "The whole subject of trusts is one of equity jurisdiction." Pomeroy proceeds (1 Pomeroy's Equity Jurisprudence [4th ed], § 151, pp 183–185):

"§ 151. *Trusts*. The whole theory of trusts, which forms so large a part of the equity jurisprudence, and which is, in a comprehensive view, the foundation of all equitable estates and interests, has un-doubtedly been developed from its germ existing

---

[3] In *Merkel* v. *Long* (1962), 368 Mich 1, the defendant trustees, objecting, were compelled by equity to execute a compromise agreement certain parties in interest had proposed for approval under the Dodge act. Here the attorney general is no less subject to such compulsion.

in the Roman law, a peculiar mode of disposing of property by testament called the '*fidei-commissum.*' * * * The whole system fell within the exclusive jurisdiction of chancery; the doctrine of trusts became and continues to be the most efficient instrument in the hands of a chancellor for maintaining justice, good faith, and good conscience; and it has been extended so as to embrace not only lands, but chattels, funds of every kind, things in action, and moneys. I shall merely state, without describing in this part of my work, the various kinds and classes of trusts which are thus subject to the exclusive equitable jurisdiction."

The attorney general, standing before the Court in this case as an appointed legal representative of the people and of that class of charitable beneficiaries contemplated by the various statutory provisions upon which he relies, is no less amenable to the judgment of equity than are other appointed legal representatives of persons unknown or indefinite, or under legal disability, or otherwise requiring representation. So far as concerns the pending contest the attorney general is no more or less than a supervisory trustee by virtue of such statutory provisions, particularly by PA 1961, No 101,[4] which act (by section 16) is known and cited as the "supervision of trustees for charitable purposes act."

The most that may be said for the attorney general's legal position in this proceeding is that he was entitled to appear for those represented by him per statute; that he, the 1958 testament considered, was eligible to contest the 1961 testament and to certify such contest to circuit; that he was entitled to object to the petition for approval of compromise of that contest for any reason legally available to any fiduciary or trustee representing legally a per-

---

[4] CLS 1961, § 14.251 *et seq.;* amended by PA 1965, No 353 (Stat Ann 1965 Cum Supp § 26.1200[1] *et seq.*).

son or persons or party or parties in direct or contingent interest; that he was entitled to litigate the merits of the ultimate question raised by him, namely, that the proposal of compromise, if given effect, would not serve best the interests of all concerned including the charitable and benevolent beneficiaries designated in the testament of 1958; and, finally, that he was entitled to review the merits of the chancellor's judgment respecting that ultimate question. Beyond these rights, however, neither he nor the prosecuting attorney was entitled to forbid the judgment of the chancellor, any more than he might veto the judgment of this Court, reached on *de novo* consideration, that the same proposal receive approval.[5]

He says that specific authority, to represent the people and uncertain and indefinite beneficiaries in actions involving charitable trusts, and to control the settlement of any will contest involving any testament which contains a devise or bequest to the uses represented by him, is vested in his office by PA 1961, No 101 (CLS 1961, § 14.251 *et seq.*); by PA 1915, No 280 (CL 1948, § 554.351 *et seq.*); and by PA 1917, No 207 (CL 1948, § 720.51 *et seq.*). We find upon examination of these statutes that none purport to bestow upon the attorney general the power claimed by him, that is, the power of an adult competent heir or legatee to interdict an agreement for compromise of a pending contest all other like heirs and legatees have signed.

This brings us to PA 1965, No 11, and PA 1965, No 353, amending respectively said Acts Nos 207 and 101. Referring to said Act No 353 the attorney general says:

---

[5] See substitution of the attorney general for the prosecuting attorney, effected by PA 1965, No 12 (Stat Ann 1968 Cum Supp § 26-.1192) amending CL 1948, § 554.352 (Stat Ann 1953 Rev § 26.1192).

"To say that such amendment implies the absence of authority previous to the amendment is erroneous. The amendment merely spells out the law and is explanatory of the common law duties of the attorney general."

The amendments of 1965 were, of course, enacted after Mrs. Reeder's death and certification to circuit of this contest. The final question, then, is whether they have supplied, with effectiveness *pendente,* the power of veto we have said, above, was lacking. For this appeal we hold they have not. One by its titular and sectional terms does not apply and the other declares a controlling qualifier which is known to our rules of statutory construction as an express exception.

Consider PA 1917, No 207, and amendatory act PA 1965, No 11: The original and unamended title of Act No 207, and original and 1965-amended section 1 thereof, apply the act *only* to a will or testament containing a gift, grant, bequest, or devise to religious, educational, charitable, or benevolent uses, *that does not name any person or corporation as donee.* The act did not apply here and now does not apply, the underscored condition considered. See the appendix hereto, that part headed "1961 Will."

Consider next PA 1961, No 101, and amendatory act PA 1965, No 353. It need only be pointed out that original and present section 11 of said Act No 101 provides that which immunizes new (by Act No 353) section 4(b) from constitutional attack.[6]

---

[6] The critical portion of 4(b) reads:

"With respect to such proceedings, no compromise, settlement agreement, contract or judgment agreed to by any or all parties having or claiming to have an interest in any charitable trust shall be valid unless the attorney general was made a party to such proceedings and joined in the compromise, settlement agreement, contract or judgment, or unless the attorney general, in writing, waives his right to participate therein."

Said section 11 originally provided, and now provides:

"Nothing in this act shall impair or restrict the jurisdiction of any court with respect to any of the matters covered by it."

In such precise manner the legislature has safeguarded the presently pertinent jurisdiction of equity. It follows that the provisions of new section 4(b) of amendatory Act No 353 are statutorily nugatory whenever, as here, they collide with that jurisdiction.

*To Conclude:* The attorney general would have judicial sanction of his intent to bet approximately one and a half million dollars worth of charitable and benevolent assets, belonging by the agreement approved below to beneficiaries represented by him, that he will succeed with contest of the 1961 testament, and then will successfully defeat contest by Mrs. Reeder's heirs of the 1958 testament, and that he thereby will bring to such beneficiaries the whole of this two million dollar estate. As against that sanguinary prospect the chancellor was required to consider that the attorney general might fail with his present contest or fail as proponent in the other, and hence lose everything for such beneficiaries. The chancellor, withal, can hardly be chided for being chary of acceptance of a part of the responsibility for possible failure of such an odds-against litigatory gamble.

To sustain the attorney general's refusal to approve this seemingly advantageous compromise, nothing has been submitted tending to persuade that his judgment should override that of the court whose judgment he reviews. Nothing brought forth in the mentioned discovery proceedings is advanced as the beginning of that kind of proof which, upon presen-

tation of the usual proponent's motion for an instructed verdict (of 1961 testacy in this instance), must meet such a motion. And the attorney general's complaint that the chancellor took no testimony (see in such regard *In Re Marxhausen's Estate,* 247 Mich 192, 199) is met by the fact that, throughout the extended arguments of counsel—before and with the chancellor—the attorney general made no demand for the taking of proof and no proffer of proof tending *prima facie* to show that he, as contestant, could support the affirmative burden every contestant bears when the proponent has proved the testament in question, has it received in evidence, and then has rested. In these circumstances no meritorious reason appears for overturning the chancellor's determination of approval.

Affirmed and remanded. On remand, if deemed necessary, the chancellor may enter a supplemental order approving the agreement for and on behalf of the objecting attorney general. No costs.

DETHMERS, C. J., and KELLY, BLACK, T. M. KAVANAGH, O'HARA, ADAMS, and BRENNAN, JJ., concurred.

## APPENDIX

(Column by column summary comparison of 1958 and 1961 testaments of Pansy Lee Reeder, deceased.)

*1958 Will*

Specific Bequests as follows:

Louis Reeder, a Nephew, if he survives: $5,000-.00

Flint Board of Education to be used for the Flint College Cultural Center: $25,000.00

Trinity Evangelical and Reform Church, New Bloomfield, Pennsylvania: $5,000.00

Mercersburg Academy, Mercersburg, Pennsylvania, to establish a scholarship loan fund for medical students: $5,000.00

Rest, residue and remainder to Genesee Merchants Bank & Trust Company, Flint, Michigan, in trust under language which in effect directs the payment of net income to the following ten charities so long as they are qualified tax exempt charities and their purposes are attainable:

*1961 Will*

Specific Bequests as follows:

First Presbyterian Church, Flint, Michigan: $10,000.00

Grand Lodge of Free and Accepted Masons, State of Michigan, to be used exclusively for benefit of Michigan Masonic Home and Hospital, Alma, Michigan: $10,000.00

Shriners Hospital for Crippled Children, a Corporation, to be used exclusively for Shriners Hospital for Crippled Children, Chicago, Illinois: $10,000.00

American Cancer Society to be used exclusively so far as legally possible by the Genesee County, Michigan Unit: $5,000.00

Young Women's Christian Association, Flint, Michigan: $1,000.00

Young Men's Christian Association, Flint, Michigan: $1,000.00

## 1958 *Will*

1. Young Women's Christian Association, Flint, Michigan
2. Young Men's Christian Association, Flint, Michigan
3. American Cancer Society for use as far as possible of Genesee County, Michigan Unit
4. National Foundation, for use as far as possible of Genesee County, Michigan Chapter
5. Tall Pine Council, Boy Scouts, Flint, Michigan
6. Fair Winds Girl Scouts Council, Flint, Michigan
7. Red Feather, Flint and Genesee County, Michigan
8. First Presbyterian Church, Flint, Michigan
9. Shriners Hospital for Crippled Children, to be used exclusively for Shriners Hospital for Crippled Children, Chicago Unit
10. Grand Lodge of Free and Accepted Masons, State of Michigan, to be used exclusively for benefit of Michigan Masonic Home and Hospital, Alma, Michigan

## 1961 *Will*

Flint Board of Education, to be used for the Flint College and Cultural Center: $25,000-.00

Personal effects, et cetera, to: Esther Melin

Rest, residue and remainder to: Esther Melin

SOURIS, J. (*dissenting*).  The principal issue in this appeal is whether a will contest can be "settled" in this State by agreement of less than all parties whose beneficial interests are affected by the proposed settlement.  For reasons to be stated, I believe the chancellor erred in approving the proposed settlement of the contest over Mrs. Reeder's 1961 will, absent agreement by the attorney general and the prosecuting attorney in behalf of the uncertain and indefinite beneficiaries of the charitable trust provisions of the 1958 will.

At the outset it should be noted that I do not dispute the appellees' generalization that equity has jurisdiction over trust estates.  Furthermore, had the will contest gone to judgment on the merits, the circuit judge's statutory[1] power to render judgment thereon would not be conditioned upon the attorney general's and the prosecutor's agreement, nor upon any other litigant's agreement.  But that is not the factual posture of this matter.  The contest has not been heard by the circuit judge.  No judgment on the merits of the contest has been rendered.  Indeed, it is sought by some of the litigants, over the objections of others, represented by the attorney general and prosecutor, to abort the contest; to call off the litigation; to "settle" all of the controversies between the contending parties, but, unfortunately, without the agreement of all parties whose interests would be affected by such a settlement.  Conceding the statutory jurisdiction of a circuit judge to hear and determine will contests and equity's common-law jurisdiction over trusts, I do not believe that the common law or statutory law[2] of this State allows some, but not all, of the bene-

---

[1] CL 1948, § 701.36 (Stat Ann 1962 Rev § 27.3178[36]).
[2] CL 1948, § 702.45 *et seq.* (Stat Ann 1962 Rev § 27.3178[115] *et seq.*).

ficially interested parties[3] to a will contest to "settle" such litigation over the objections of nonparticipating parties whose beneficial interests may be affected, even with the approval of a circuit judge sitting as a chancellor. That, as I view this record, is what the chancellor was asked, and undertook, to do here.

There are two wills involved in this appeal. The proposed settlement agreement provides that the will of 1961 be denied admission to probate and that the will of 1958 be admitted to probate. It is under the provisions of the 1958 will that the attorney general and prosecutor claim the right, properly in my view, to represent the interests of uncertain and indefinite beneficiaries of the trust provided in that will.

Appellees do not summarize accurately, in a chart inserted in their brief, the provisions of the 1958 will. Their chart describes the 1958 will's trust provision as "in effect" directing the payment of net income to 10 named charities. If it did that, there would be merit in their claim that there are no uncertain and indefinite beneficiaries the attorney general and prosecutor could represent.

The fact is, however, that the 1958 will's trust provisions clearly empower the trustees to exercise discretionary authority not only in determining how much each of the 10 named charities shall receive annually, but also whether they shall receive anything and whether and to what extent other unnamed charities possessing stated qualifications should participate in the testatrix's beneficence. The

---

[3] Trustees, of course, are not beneficially interested parties in such contests and may be ordered, even over their objections, to execute settlement agreements entered into by all those beneficially interested. See, for example, *Rose* v. *Southern Michigan National Bank* (1931), 255 Mich 275, and *Merkel* v. *Long* (1962), 368 Mich 1.

pertinent provisions of the 1958 will are set forth in the margin.[4]

---

[4] "I give, devise and bequeath the rest, residue and remainder of my estate to the Genesee Merchants Bank & Trust Co., of Flint, Michigan, in trust, to have and to hold the same for and upon the following uses and purposes and subject to the conditions and powers hereinafter set forth, as follows:

"A. My trustee shall pay and distribute either principal or net income in accordance with the specific provisions relative thereto, as hereinafter set forth, to such community fund, hospital, educational, charitable, religious or scientific organizations, or to such other types of similar agency organization or institution as in the sole and final judgment of my trustee shall be worthy beneficiaries of this trust. However, my trustee shall only make distributions of principal or net income to organizations which are exempt from Federal income tax liability at the time of such distributions and contributions to which qualify for deductions under the applicable provisions of the internal revenue code governing charitable deductions as now in effect or as hereafter amended. In no event shall any distribution be made to any organization which allows any part of its earnings to inure to the benefit of any private shareholder or individual, which devotes a substantial part of its activities to the carrying on of propaganda or otherwise attempting to influence legislation, which engages in any 'prohibited transaction' as defined under applicable provisions of the internal revenue code as now in effect or as hereafter amended, or which would not qualify for exemption under the then applicable provisions of the Michigan inheritance tax statutes.

"B. At least once a year, and at such additional times as my trustee may deem it advisable, my trustee is directed to distribute the net income of the trust to the organizations of the types stated in paragraph 6A above. Primarily, I request my trustee to make such distributions in equal shares to the ten organizations hereinafter stated, so long as they qualify under the provisions of paragraph 6A above, but if the presently designated purposes of any such organization shall, in the sole opinion of my trustee, be or become impossible of attainment, impracticable or unnecessary by reason of changed conditions or otherwise, then my trustee in the exercise of its sole discretion shall apply the funds available for expenditure hereunder to such similar purposes as in its opinion will most nearly fulfill the general charitable purpose of this trust; and my trustee may, in such circumstances as may appeal to its discretion from time to time, add or delete beneficiaries of the types contemplated in paragraph 6A above to those hereinafter named as beneficiaries under this subparagraph, and may further, in its own discretion, determine from time to time what percentage, and whether any, of said net income shall be paid to any beneficiary, whether hereinafter named or added by my trustee. The ten organizations which I desire my trustee to primarily consider are as follows:

"(1) The Young Women's Christian Association, a Michigan corporation, of Flint, Michigan.

"(2) The Young Men's Christian Association of Flint, a Michigan corporation, of Flint, Michigan.

Because there are uncertain and indefinite beneficiaries of the 1958 will's trust, the attorney general and prosecuting attorney, in behalf of such beneficiaries, filed their appearance in the proceedings to probate the 1958 will and filed objections to the petition for admission to probate of the 1961 will. Those steps were taken in January and March of 1964. At that time, the prosecuting attorney's right and duty to act in behalf of the uncertain and

---

"(3) The American Cancer Society, Michigan Division, Inc., for the exclusive use and benefit, so far as is legally possible, of the Genesee County, Michigan, Unit.

"(4) The National Foundation (formerly the National Foundation for Infantile Paralysis, Incorporated), a corporation organized under the membership corporations law of the State of New York, having its principal office at 800 Second avenue, New York 17, N. Y. for the exclusive use and benefit, so far as is legally possible, of the Genesee County, Michigan, Chapter.

"(5) The Tall Pine Council, Boy Scouts of America, of Flint, Michigan.

"(6) The Fair Winds Girl Scout Council, Inc., of Flint, Michigan.

"(7) The Red Feather Fund of Flint and Genesee County, at Flint, Michigan.

"(8) The First Presbyterian Church of Flint, Michigan.

"(9) The Shriners Hospitals for Crippled Children, a corporation, to be used exclusively for the benefit of the Shriners Hospitals for Crippled Children, Chicago Unit, located in the City of Chicago, Illinois, owned, operated and maintained by said corporation.

"(10) The Grand Lodge of Free and Accepted Masons of the State of Michigan, to be used exclusively for the use and benefit of the Michigan Masonic Home and Hospital at Alma, Michigan, funds received hereunder to be devoted to the support and maintenance of said Masonic Home in accordance with, for the purposes, and upon, the conditions set forth in the articles of incorporation, corporate by-laws, and the resolutions of said Grand Lodge of Free and Accepted Masons of the State of Michigan, creating the Masonic Home and the Masonic Home Endowment Fund.

"C. It is primarily my intention that the trust herein created continue for an indefinite period of time, and that my trustee only make distribution of the net income therefrom. However, I do not direct that the trust be perpetual, and to that end I hereby give my trustee the right and authority, which I request that it use sparingly, to distribute to any of the organizations named in paragraph 6B above, and to such other organizations of the type stated in paragraph 6A above as it may in its sole discretion select, such portions of the principal of this trust, from time to time, as it believes, in its sole discretion, may be of some special assistance to, or fulfill some special need of, the organization receiving such funds, so long as such funds are used for purposes which meet the qualifications above prescribed in paragraph 6A."

indefinite beneficiaries of the 1958 will's charitable trust were contained in PA 1915, No 280 (CL 1948, § 554.351 *et seq.* [Stat Ann 1953 Rev § 26.1191 *et seq.*])[5] and the attorney general's were contained in PA 1961, No 101 (CLS 1961, § 14.251 *et seq.* [Stat Ann 1963 Cum Supp § 26.1200(1) *et seq.*]).[6]

---

[5] The pertinent provisions of Act No 280 read then as follows:

"Sec. 1. No gift, grant, bequest or devise, whether in trust or otherwise to religious, educational, charitable or benevolent uses, or for the purpose of providing for the care or maintenance of any part of any cemetery, public or private, or anything therein contained which shall in other respects be valid under the laws of this State, shall be invalid by reason of the indefiniteness or uncertainty of the object of such trust or of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities. * * *

"Sec. 2. The court of chancery for the proper county shall have jurisdiction and control over the gifts, grants, bequests and devises in all cases provided for by section 1 of this act. Every such trust shall be liberally construed by such court so that the intentions of the creator thereof shall be carried out whenever possible. The prosecuting attorney of the county in which the court of chancery shall have jurisdiction and control shall represent the beneficiaries in all cases where they are uncertain or indefinite, and it shall be his duty to enforce such trusts by proper proceedings in the court, but he shall not be required to perform any duties in connection with such trusts in any court outside of this state."

By PA 1965, No 12, given immediate effect on April 13, 1965, before filing of the petition for approval of settlement and over seven months before the chancellor decreed approval of the purported settlement, the legislature amended section 2 of Act No 280 by substituting the attorney general for the prosecuting attorney. See Stat Ann 1968 Cum Supp § 26.1192.

[6] The pertinent provisions of Act No 101 read then as follows:

"Sec. 1. It is hereby declared to be the policy of the state that the people of the state are interested in the administration, operation and disposition of the assets of all charitable trusts in the state; and that the attorney general shall represent the people of the state in all courts of the state in respect to such charitable trusts. This act applies to all trusts and trustees holding property for charitable purposes over which the state or the attorney general has enforcement or supervisory powers. * * *

"Sec. 4. (a) The attorney general shall have jurisdiction and control and shall represent the people of the state and the uncertain or indefinite beneficiaries in all charitable trusts in this state, and may enforce such trusts by proper proceedings in the courts of this state. * * *

"Sec. 11. The attorney general may institute appropriate proceedings to secure compliance with this act and to secure the proper administration of any trust or other relationship to which this act applies. The powers and duties of the attorney general provided in

My conclusion in this case is supported by this Court's decision in *Rose* v. *Southern Michigan National Bank* (1931), 255 Mich 275. That case involved a will contest compromise agreement entered into pursuant to the predecessor of our currently applicable Dodge act.[7] The Court held that it was not necessary to the jurisdiction of the chancery court to which the agreement was presented for approval that the testamentary trustee have signed the agreement, since he had only a legal title to the trust estate and no beneficial interest therein. Had he a beneficial interest, however, his signature on the agreement in advance of its submission to the court would have been essential under the statute:

"It must be signed by all those whose interests may be limited or diminished by the agreement if consummated. It may be conceded that unless the agreement is so signed the court has no jurisdiction to approve it or to authorize its execution by others. But an executor or trustee has no such interest in the estate as will or may be limited or diminished by the agreement if consummated. Therefore, under our statute, their signatures are not required in advance of its submission to the court." 255 Mich 275, 278.

In this case of Reeder, the uncertain and indefinite beneficiaries of the charitable trust, represented by the attorney general and the prosecuting attorney, have beneficial interests which may be affected by the settlement agreement proposed. Without the approval of their statutory representatives, the attorney general and prosecuting attorney, the chan-

_____

this act are in addition to his existing powers and duties. Nothing in this act shall impair or restrict the jurisdiction of any court with respect to any of the matters covered by it."

For current provisions, as amended by PA 1965, No 353, see Stat Ann 1968 Cum Supp § 26.1200(1) *et seq.*

[7] CL 1948, § 702.45 *et seq.* (Stat Ann 1962 Rev § 27.3178 [115] *et seq.*),

cellor had no jurisdiction to entertain a petition for approval of the compromise agreement proposed by the other beneficially interested parties.

I would reverse the chancellor's order of approval. Appellants should be allowed to tax their costs.